## 44743. THOMPSON v. THE STATE.
(361 SE2d 154)

WELTNER, Justice.

Rooney Thompson shot and killed Richard Jenkins with a handgun. He was convicted of malice murder and sentenced to life impris-

onment.[1]

1. The record contains a full account of hostility between Thompson and the victim, arising from Thompson's relationship with the victim's sister. On one occasion, the two men exchanged gunfire. Shortly before the killing, Thompson was heard to say "[T]his is not over with yet . . . 'cause I'm going to get him 'cause he ain't got no business hitting me with that iron pipe . . . I'm going down here and I'm going to kill him."

2. On the night of the killing, Thompson approached the victim at a tavern, and gunfire erupted. Thompson pursued the victim, firing his handgun. The victim ran and returned the fire. Jenkins died from a wound to the back. Thompson was shot in the chest. Thompson testified that the victim fired first. One witness testified that Thompson first brandished his handgun. Others testified they did not know which of the two men was the aggressor.

3. Thompson contends the trial court erred in not granting his motion for a directed verdict of not quilty, and in refusing to grant a new trial. He further contends the state failed to prove beyond a reasonable doubt that he did not act in self-defense. From the evidence in the case, a rational trier of fact could have found Thompson guilty of malice murder beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

4. The trial court instructed the jury as to self-defense and voluntary manslaughter. Thompson contends the trial court erred in refusing to give his requested charge on involuntary manslaughter. His sole defense was justification. We observed in *Saylors v. State*, 251 Ga. 735, 737 (309 SE2d 796) (1983), that a "defendant who seeks to justify homicide under the 'self-defense' statute, OCGA § 16-3-21 . . . is not entitled to an additional instruction on involuntary manslaughter in the course of a lawful act, (OCGA § 16-5-3 (b) . . .) *whatever* the implement of death. For if he is justified in killing under OCGA § 16-3-21 . . . he is guilty of no crime at all. If he is *not* so justified, the homicide does not fall within the 'lawful act' predicate of OCGA § 16-5-3 (b) . . . for the jury, in rejecting his claim of justification, has of necessity determined thereby that the act is not lawful."

5. The trial court instructed the jury: "I charge you that evidence of prior difficulties between the defendant and the alleged victim has been admitted for your consideration solely and only for the purpose

---

[1] The killing took place on April 13, 1986. Thompson was indicted on May 20, 1986. On June 26, 1986, he was convicted and sentenced. On February 10, 1987, the trial transcript was filed. On July 18, 1986, Thompson's motion for new trial was filed, and it was argued and denied on May 5, 1987. The notice of appeal was filed on June 4, 1987. This appeal was docketed on June 10, 1987, and the appeal was submitted without oral argument on July 24, 1987.

of illustrating, if it does so illustrate, the state of feelings between the defendant and the alleged victim and the bent of mind and course of conduct on the part of the accused. Now this evidence is admitted for your consideration only as it may illustrate such matters and for no other purpose. Whether this evidence illustrates such a matter is solely for you to determine, but you are not to consider such evidence for any other purpose." Thompson asserts that this charge prohibited the jury from considering the victim's alleged aggressive conduct toward Thompson, and from inferring a motive on the part of the victim to shoot Thompson twice, and before Thompson could defend himself. Evidence of a prior aggravated assault by the victim upon Thompson was admitted without objection. The charge was not error.

6. The trial court instructed the jury: "I charge you that you may infer that a person of sound mind and discretion intends to accomplish the natural and probable consequences of his intentional act, and if a person of sound mind and discretion intentionally, and without justification, uses a deadly weapon or instrumentality in the manner in which such weapon or instrumentality is ordinarily used and thereby causes the death of a human being you may infer the intent to kill." Thompson contends the charge was burden-shifting because it was not followed immediately by an instruction that it is within the discretion of the jury to determine whether an inference of guilt should be drawn. We note that this charge is contained in Suggested Pattern Jury Instructions, Volume II, Criminal Cases, published by the Council of Superior Court Judges of Georgia (page 92). While it would be desirable to include language reaffirming that it is within the jury's discretion whether or not it will draw such an inference, the charge considered in its entirety was not burden-shifting. The trial court instructed the jury as to the presumption of innocence, and that there is *no* presumption of criminal intent. Further instructions were given concerning the definitions of murder and malice. We hold that reasonable jurors would not have construed the charge as one that compelled a finding of guilt. *Wilson v. Jones*, 251 Ga. 23 (302 SE2d 546) (1983).

*Judgment affirmed. All the Justices concur.*

DECIDED OCTOBER 8, 1987.

*Henry G. Bozeman*, for appellant.

*Beverly B. Hayes, Jr., District Attorney, Samuel A. Hilbun, Edwin J. Wilson, Assistant District Attorneys, Michael J. Bowers, Attorney General, Dennis R. Dunn, Assistant Attorney General*, for appellee.