S94P1594. DRANE v. THE STATE.
(455 SE2d 27)

HUNT, Chief Justice.

Leonard M. Drane was convicted of malice murder, felony murder and aggravated battery in connection with the death of Renee Blackmon. The jury recommended the death penalty for malice murder, finding that the murder had been committed during the course of an aggravated battery, OCGA § 17-10-30 (b) (2), and that it was wantonly vile, horrible or inhuman in that it involved depravity of mind and an aggravated battery to the victim, OCGA § 17-10-30 (b) (7). The trial court imposed the death sentence.[1] Drane raises a number

---

[1] The crimes occurred on June 13, 1990. Drane was indicted on November 19, 1990. On July 9, 1991, the state filed its notice of intent to seek the death penalty. Drane's trial began on September 14, 1992, and on September 25, 1992, the jury returned its verdict finding Drane guilty of the crimes charged. The jury returned its recommendation of the death sentence, and the trial court imposed that sentence, as well as 20 years imprisonment for aggra-

of enumerations of error, including the exclusion, in the guilt-innocence phase of the trial, of his co-indictee's alleged confession. We remand to the trial court for a hearing to determine: (1) whether the prosecutor's peremptory strikes were gender-neutral and (2) whether there are exceptional facts and circumstances in this case so that the exclusion of the alleged confession deprived Drane of due process. We affirm the trial court regarding Drane's remaining enumerations of error.

Drane and his co-indictee, David Robert Willis, were roommates. On the evening of the murder, they went to a liquor store in Willis's truck. Outside the store, they met Renee Blackmon, who asked them for crack cocaine and then agreed to ride in the truck and drink with the two men. Willis drove the truck to a spot near a lake, where he had sex with the victim in the truck while Drane stood in front of the truck. Willis and the victim then walked together to the back of the truck, where Willis shot the victim in the head. The bullet blew off part of the victim's skull and detached her brain. Thereafter, the victim's throat was slashed at least six times. There is contradictory evidence whether Drane or Willis slashed her throat and whether she was still breathing at the time.

After the murder, Drane assisted Willis in concealing the evidence and in disposing of the body. Drane continued to live with Willis for a few weeks until the two were arrested.

1. Construing the evidence in the light most favorable to the verdict, a rational trier of fact could have found Drane guilty of the crimes charged beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. The parties agree that this case must be remanded to the trial court for a hearing to determine whether the prosecutor's reasons for using peremptory challenges to strike female jurors were gender-neutral. Of the 39 prospective jurors on the panel, 22 were women. The state used all its peremptory challenges to strike female jurors. Prior to the jury being sworn, Drane raised a challenge under *Batson v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986), contending that the prosecutor's strikes were gender-biased. The state responded that *Batson* did not apply to gender, and the trial court denied Drane's challenge. *J. E. B. v. Alabama*, ___ U. S. ___ (114 SC 1419, 128 LE2d 89) (1994), in which the U. S. Supreme Court held that the equal protection clause of the United States Constitution prohibits discrimination in jury selection on the basis of gender, had not been decided at the time of Drane's trial in September 1992. Because

---

vated battery. Drane's motion for a new trial, filed October 20, 1992, was denied on June 20, 1994. His appeal was docketed in this court on July 18, 1994. The case was orally argued on October 18, 1994.

Drane raised his objection at trial, *J. E. B. v. Alabama* requires a hearing in accordance with *Batson*, to permit the state to explain its use of the peremptory challenges and to allow the trial court to make findings under *Batson v. Kentucky*. See *Smith v. State*, 263 Ga. 224, 227 (430 SE2d 579) (1993). If the trial court determines that the prosecutor's use of peremptory strikes was not gender-biased, then Drane shall be entitled to file a renewed appeal on this issue.

3. We also remand this case to the trial court because it is unclear from our review of the record whether, in excluding from the guilt-innocence phase[2] testimony of the alleged confession by Willis, Drane's co-indictee, the trial court adequately considered the elements of reliability and necessity which would require admission of that evidence under *Chambers v. Mississippi*, 410 U. S. 284, 302 (93 SC 1038, 35 LE2d 297) (1973) (failure to admit evidence of another's confession, offered during guilt-innocence phase of trial, constituted a violation of due process). See also *Green v. Georgia*, 442 U. S. 95 (99 SC 2150, 60 LE2d 738) (1979) (failure to admit co-indictee's confession offered at punishment phase of trial violated due process because testimony was highly relevant to a critical issue in punishment phase and substantial reasons existed to assume its reliability). While this type of evidence is generally inadmissible, see *Guess v. State*, 262 Ga. 487, 488 (422 SE2d 178) (1992), it may, nevertheless, be admitted in exceptional circumstances under *Chambers* and *Green* when it is both reliable and necessary. Accordingly, on remand, Drane must demonstrate, and the trial court is directed to fully consider, following the analysis in *Chambers* and *Green*, the reliability and necessity of this evidence at the guilt-innocence phase.[3]

4. Drane contends the trial court erred in charging the law of conspiracy, claiming there was no evidence to support it. A person commits conspiracy "when he together with one or more persons conspires to commit any crime and any one or more of such persons does any overt act to effect the object of the conspiracy." OCGA § 16-4-8. The essence of conspiracy under OCGA § 16-4-8 is an *agreement*, and that agreement (unlike its meaning in contract law) may be a mere tacit understanding. Kurtz, Criminal Offenses and Defenses in Georgia (3rd ed.) at 91-92 (1991). Here, there was evidence that Drane and Willis lived together and picked up the victim together,

---

[2] This evidence was admitted, without objection, at the sentencing phase. However, we note that the *Chambers-Green* exception to the general rule against admission of this evidence is not limited to the punishment phase. See *Chambers*, 410 U. S. at 302.

[3] While *Chambers* and *Green* offer examples of trustworthiness, the trial court's consideration is not limited to them. In this case, the extent of the state's own reliance on Guthrie's testimony, if shown, may relate to the first prong, just as Drane's explanation, if any, for not calling Willis to the stand may relate to the second. See *Higgs v. State*, 256 Ga. 606, 608 (3, 4) (351 SE2d 448) (1987).

that both men concealed the evidence and disposed of the body, and that Drane was living with Willis three weeks after the crime when Drane was arrested. There was also evidence that Drane bragged about having had sexual intercourse with the victim and that Drane said he had cut the victim's throat. This evidence, though slight, is sufficient to support an inference that Drane and Willis had a tacit understanding to murder the victim. See *Jones v. State*, 242 Ga. 893 (252 SE2d 394) (1979). See also OCGA § 16-2-6 (the factfinder may find criminal intention "upon consideration of the words, conduct, demeanor, motive, and all other circumstances connected with the act for which the accused is prosecuted.").[4]

5. There was no error in the admission of testimony regarding statements Drane made to an examiner prior to commencement of an unstipulated polygraph examination. Before making the statements, Drane had been read his *Miranda* warning and had signed a waiver of rights form. The trial court ordered that there could be no comment referring to the polygraph examination, and Drane does not complain of any. In *Stack v. State*, 234 Ga. 19, 25 (214 SE2d 514) (1975), overruled on other grounds in *State v. Chambers*, 240 Ga. 76 (239 SE2d 324) (1977), we noted that admissions which are otherwise competent and admissible are not to be excluded simply because the admissions were made after the taking of a lie detector test.[5] The same rule ap-

---

[4] Although we find no error in the trial court's charge on conspiracy, we note that the state did not in fact seek to prove Drane's guilt as a conspirator, but, rather, proceeded against Drane as a party to the crime of murder with Willis. A brief analysis of the nature of the parties to a crime statute, OCGA § 16-2-20, as it relates to conspiracy, OCGA § 16-4-8, demonstrates that even had the trial court erred in charging conspiracy in this case, that error is harmless.

The evidence was certainly sufficient, and Drane does not argue to the contrary, to support a charge on parties to a crime, in particular OCGA § 16-2-20 (b) (1) (directly committing the crime) and 16-2-20 (b) (3) (aiding or abetting in the commission of the crime). While the language of OCGA § 16-2-20 appears all inclusive of theories of criminal liability, it has been noted that conspiracy, which predates OCGA § 16-2-20, is a separate theory on which the state may proceed. *Kurtz*, supra at 427-428; *Scott v. State*, 229 Ga. 541, 543-544 (1) (192 SE2d 367) (1972). The main reason for the state to proceed against the defendant under a conspiracy, over a party to crime, theory is that by using a conspiracy theory, the state may take advantage of the conspiracy exception to the hearsay rule, OCGA § 24-3-5 (allowing statements of conspirators in the course of the conspiracy to be used against any one of the conspirators). Here, the state did not attempt to use Willis's statements as a co-conspirator against Drane under the conspiracy hearsay exception. Accordingly, even had there been error in the trial court's charge on conspiracy, that error, in this case, would be harmless.

We find no merit to Drane's contention that the trial court erred in refusing to give his charge on conspiracy as a lesser included offense. Any error in this regard would be harmless as it is undisputed that the crime of murder was actually committed so that conspiracy would, in any case, be merged with murder. See *Crosby v. State*, 232 Ga. 599, 600 (3) (207 SE2d 515) (1974). Nor do we find merit to Drane's contention that the trial court overemphasized conspiracy to the jury in its recharge. The trial court's recharge was proper, and there is no indication that the recharge could have left an erroneous impression on the jury.

[5] To the extent that *Johnson v. State*, 208 Ga. App. 87, 88 (429 SE2d 690) (1993), cert.

plies to admissions made before commencement of the test. *Williams v. State*, 144 Ga. App. 130, 135 (240 SE2d 890) (1977).

6. The trial court did not err in denying Drane's request to charge that one who is guilty only of concealing evidence after a crime is not a party to the crime. The court's other charges conveyed to the jury that, unless it found Drane either to have inflicted the mortal wound or to have participated in the felonious design, it should find Drane not guilty.

7. Drane argues the trial court erred in failing to grant his motion for directed verdict on the issue of the death penalty because there is no evidence supporting any aggravating circumstance under OCGA § 17-10-30. The jury found as aggravating circumstances that the offense of murder was committed during commission of an aggravated battery, OCGA § 17-10-30 (b) (2), and that the murder was outrageously or wantonly vile, horrible, or inhuman in that it involved depravity or an aggravated battery to the victim, OCGA § 17-10-30 (b) (7). Drane argues that there is no evidence to support the contention that the cutting of the victim's throat, the aggravating battery, occurred during life.

Post-mortem mutilation of a body may show depravity of mind. *Conklin v. State*, 254 Ga. 558, 565 (331 SE2d 532), cert. denied, 474 U. S. 1038 (106 SC 606, 88 LE2d 584) (1985); *Hance v. State*, 245 Ga. 856, 862 (268 SE2d 339) (1980), cert. denied, 449 U. S. 1067 (101 SC 796, 66 LE2d 611) (1980). We find no merit to Drane's contention that the court erred in failing to define "malice" for the jury. Therefore, the evidence supported a finding of depravity as an aggravating circumstance under OCGA § 17-10-30 (b) (7).

Furthermore, although the state concedes that the medical examiner's testimony was inconclusive as to whether the victim was alive when her throat was cut, and although it was clear from the medical examiner's testimony that the victim could not have survived the gunshot wound more than momentarily, Drane's own statements indicated that the victim was gasping when her throat was cut. While it is unclear whether the gasping was an indication of life, it does constitute some evidence of an aggravated battery sufficient to support a finding of aggravating circumstances under OCGA § 17-10-30 (b) (2) and (b) (7).

Since the evidence supports the statutory aggravating circumstances found by the jury, OCGA § 17-10-30 (b) (2) and (b) (7), if a retrial becomes necessary, the state may again seek a death sentence. *Moore v. State*, 263 Ga. 11, 14 (9) (427 SE2d 766) (1993).

---

denied in *State v. Johnson*, 1993 Ga. LEXIS 604 (Ga. May 13, 1993), cited by Drane, is in conflict with this opinion, it is overruled.

8. There is no merit to the contention that the trial court's sentencing phase instructions, reviewed in context, ordered the jury to find the statutory aggravating circumstances beyond a reasonable doubt, removing the state's burden of proof.

9. The trial court did not err in failing to merge the conviction for aggravated battery with the conviction for malice murder. The victim's throat was slashed at least six times. A rational trier of fact could have found Drane guilty of aggravated battery independent of the act causing the victim's death. See *Montes v. State*, 262 Ga. 473 (421 SE2d 710) (1992).

10. The trial court did not err in admitting photographs depicting the victim's decomposed body. Photographs relevant to the location of the body and the nature and location of wounds are admissible where alterations to the body are due to the combined forces of the murderer and the elements. *Leggett v. State*, 256 Ga. 274, 275 (347 SE2d 580) (1986). The court likewise did not err in admitting post-autopsy photographs in which the victim's skull had been reconstructed. Reconstruction was necessary in order to demonstrate to the jury where the bullet had entered and exited. There was no alteration to the wounds. The photographs were relevant to testimony regarding the murder weapon and to show the cause and manner of the victim's death. See *Brown v. State*, 250 Ga. 862, 867 (302 SE2d 347) (1983). The photographs were not unduly duplicative.

11. The trial court did not err in admitting a photograph of the victim while in life. The photograph was tendered for the purpose of identifying the victim as the person who got into the truck with Drane and Willis the night of the murder.

12. The trial court likewise did not err in admitting photographs of the appellant taken in police custody. Drane's appearance had changed from the time of the crime to the time of trial, making it difficult for witnesses to identify him in the courtroom. See *O'Toole v. State*, 258 Ga. 614, 616 (373 SE2d 12) (1988).

13. We find no merit to Drane's contention that the trial court erred in refusing to allow the defense to question a potential juror during voir dire about her understanding of the meaning of a life sentence.

14. We find no merit to Drane's remaining enumerations which are: that the trial court erred in not permitting the selection of a new jury when after the jury was impaneled, the court reversed an earlier ruling and agreed to allow the state to admit the polygraph examiner's testimony; that the trial court erred in striking certain jurors for cause and in failing to strike others for cause; that the trial court should have granted his motion for continuance to prepare for trial; and that his sentence of death is disproportionate to the sentence of life that Willis received.

*Judgment affirmed in part and remanded in part. All the Justices concur, except Hunstein, Carley, and Thompson, JJ., who dissent.*

HUNSTEIN, Justice, dissenting.

While I concur with the majority that a remand is the proper remedy for consideration of Drane's challenge to the use of peremptory strikes pursuant to *J. E. B. v. Alabama*, ___ U. S. ___ (114 SC 1419, 128 LE2d 89) (1994), I respectfully dissent to the majority's holding that a remand is also required for the trial court to further analyze whether testimony by Guthrie regarding the cellblock statement of Drane's co-indictee, Willis, should be excluded from the guilt-innocence phase of this case.

The trial court excluded evidence that during the time Willis was confined in prison Willis informed Guthrie at some unspecified period of time after the crime occurred that he shot the victim and slit her throat. The record reveals that the trial court excluded this testimony on hearsay grounds, not by some "mechanistic" application of the evidentiary rule, as condemned in *Chambers v. Mississippi*, 410 U. S. 284 (93 SC 1038, 35 LE2d 297) (1973) and *Green v. Georgia*, 442 U. S. 95 (99 SC 2150, 60 LE2d 738) (1979), but rather on the basis that the evidence proffered by appellant fell woefully short of the reliability demonstrated by the statements in issue in *Chambers* and *Green*.

In *Chambers* and *Green* the United States Supreme Court recognized that under the Constitution, evidence that is highly relevant to a critical issue in either the guilt-innocence phase or the penalty phase but which is generally inadmissible under an evidentiary rule must not automatically be excluded if tendered in a capital case. Rather, the Supreme Court in these cases adopted a balancing approach to the admission of such evidence, in which the value of the tendered evidence "must be weighed against the harm resulting from the violation of the evidentiary rule. [Cit.]"[6] *Collier v. State*, 244 Ga. 553, 567 (9) (261 SE2d 364) (1979), overruled on other grounds, *Thompson v. State*, 263 Ga. 23 (2) (426 SE2d 895) (1993).

In *Chambers*, the testimony was deemed trustworthy because the three spontaneous confessions were made to close friends shortly following the murder, each confession was corroborated by other evidence in the case, the alleged perpetrator had been observed with the murder weapon, and the declarant was present in the courtroom and available for cross-examination. Similarly in *Green* in introducing mitigating evidence it was shown that the statement was made spon-

---

[6] This balancing test must be applied consistent with this Court's policy against placing unnecessary restrictions on mitigating evidence offered during the sentencing phase. *Romine v. State*, 251 Ga. 208, 217 (305 SE2d 93) (1983).

taneously to a "close friend," there was ample evidence corroborating the confession and the statement was against interest. Furthermore, in *Green* the confession had previously been used by the state in its prosecution of the declarant.

Both *Chambers* and *Green* involve circumstances providing considerable assurances of the reliability of the evidence. No further evidence is required here to support the conclusion drawn by the trial court because Drane cannot establish a similarly compelling case. Willis' statement was made to a mere cellmate, not a close acquaintance. It was not shown to be close in time to the murder and it contained a factual inaccuracy. Moreover, the statement cannot be said to be unquestioningly against interest in that Guthrie acknowledged that inmates often exaggerate their crimes as a form of protection from other inmates. Finally, although it is not determinative of the issue, the record reflects that Willis was not present in the courtroom and available for cross-examination had it been necessary to question him about the veracity of the statement.[7]

Contrary to the majority's conclusion, the trial court fully considered the proffer of Guthrie's testimony before excluding it and no further findings are either needed or required to support the trial court's ruling.[8] Furthermore, that the proffered testimony would have had no bearing on the outcome of the guilt-innocence phase of the trial is amply demonstrated by the fact that Guthrie's testimony, presented at the sentencing phase of the trial, had no mitigating effect on the jury's verdict. Accordingly, I would affirm the trial court's exclusion of this testimony from the guilt-innocence phase of the case.

I am authorized to state that Justice Carley and Justice Thompson join in this dissent.

DECIDED MARCH 17, 1995 —
RECONSIDERATION DENIED MARCH 30, 1995.

*Lavender & Lavender, Robert W. Lavender,* for appellant.
*Lindsay A. Tise, Jr., District Attorney, Michael J. Bowers, Attorney General, Susan V. Boleyn, Senior Assistant Attorney Gen-*

---

[7] I disagree that the State's use of Guthrie's statement against Willis in Willis' trial can serve as an indicia of reliability in Drane's trial. Drane was tried over a year before Willis was convicted in October 1993. Research has revealed no authority, and the majority has cited none, wherein post-trial developments justify disturbing a trial court's evidentiary ruling under circumstances like those present here. Trial courts do not have the advantage of this Court's hindsight when issuing evidentiary rulings.

[8] This is especially apparent inasmuch as the record reflects that Willis had been tried and convicted at the time the trial court ruled on Drane's motion for new trial.

*eral, Peggy R. Katz, Assistant Attorney General,* for appellee.