## S96A0693. TURNER v. THE STATE.
(476 SE2d 252)

BENHAM, Chief Justice.

Demetrius Turner and three others were charged with the murder of a convenience store clerk. Appellant was tried separately and was convicted of malice murder, armed robbery, and possession of a firearm during the commission of a felony in connection with the homicide. The jury also returned guilty verdicts against appellant on aggravated assault and escape charges.[1]

---

[1] The incident resulting in the murder, armed robbery, and firearm possession charges took place on September 1, 1992, and appellant was arrested the next day. The escape and aggravated assault charges stemmed from the escape of appellant and his co-indictees from the Coffee County Jail on October 11, 1992. The Coffee County grand jury returned an indictment against appellant on October 26, 1992, and appellant was notified on January 28, 1993, of the State's intent to seek the death penalty. Appellant's trial commenced February 14, 1995, and resulted in the return of guilty verdicts on February 22. After the jury declined to recommend imposition of the death penalty, the trial court sentenced appellant to life imprisonment for the murder, and imposed a consecutive life sentence for the armed robbery conviction; a consecutive five-year sentence for possession of a firearm during the

The State presented evidence that the victim was shot in the heart with a .25 caliber semi-automatic pistol which authorities found, at appellant's direction, under an abandoned trailer behind the mobile home of one of appellant's co-indictees. The convenience store's cash register drawer was found open and the currency missing. Appellant told officers he pointed the gun at the victim and told her to back away from the register, and the gun fired when the victim slapped at it. A firearms expert from the Georgia State Crime Laboratory testified that the gun would not fire unless both safety devices were disengaged and 10.5 pounds of pressure were applied to the trigger. Appellant also told officers he had worn a mask and a baseball cap, both of which were found with the weapon.

Concerning the aggravated assault and escape charges, a Coffee County jailer testified that he entered the jail cell holding appellant and one of his co-indictees to investigate a plumbing malfunction, and the co-indictee tried to leave the cell. The jailer was rendered unconscious when he was struck several times by someone in the cell as the jailer attempted to keep the co-indictee from leaving the cell. Appellant, his cellmate, and their two other co-indictees fled the jail, but were recaptured within 48 hours.

1. The evidence was sufficient to authorize a rational trier of fact to find appellant guilty beyond a reasonable doubt of the crimes for which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. In selecting the jury to try this case, the State used seven peremptory challenges to strike black venirepersons. Citing *Batson v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986), appellant asserted that the State improperly used its peremptory strikes to remove black venirepersons in violation of his Fourteenth Amendment right to equal protection of the laws. The trial court found that a prima facie showing of racial discrimination had been made, and required the State to give racially neutral reasons for the exercise of its peremptory challenges. After hearing from the State, the trial court concluded that the district attorney had articulated acceptable non-racial reasons for the exercise of each challenged peremptory strike. On appeal, appellant takes issue with the trial court's ruling as to one of the dismissed venirepersons.

The Equal Protection Clause of the U. S. Constitution prohibits discrimination in jury selection on the basis of race or gender, or the assumption that a venireperson will be biased in a particular case for

commission of a crime; a concurrent 12-month sentence for escape; and a concurrent 20-year sentence for aggravated assault. Appellant's Notice of Appeal was filed March 27, 1995, and the appeal was docketed in this Court on January 19, 1996, and submitted for decision on briefs.

no reason other than the person's race or gender. *Tedder v. State*, 265 Ga. 900 (2) (463 SE2d 697) (1995). Thus, the ultimate issue in a *Batson* challenge is whether discrimination occurred in the selection of the jury. *Batson v. Kentucky*, supra, 476 U. S. at 95. The opponent of the peremptory strike bears the burden of persuading the trial court that the proponent of the strike acted with discriminatory intent in exercising the peremptory challenge. Id., 476 U. S. at 98. The party challenging the peremptory strike makes out a prima facie case of purposeful discrimination "by showing that 'the totality of the relevant facts gives rise to an inference of discriminatory purpose.' *Batson v. Kentucky*, 476 U. S. 79, 94. . . ." *Whatley v. State*, 266 Ga. 568 (3) (468 SE2d 751) (1996). Once a prima facie case is made, the proponent of the strike is required to set forth a race-neutral, case-related, clear and reasonably specific explanation for the exercise of the peremptory strike. *Greene v. State*, 266 Ga. 439 (5) (469 SE2d 129) (1996); *Tedder v. State*, supra, 265 Ga. at 901. See also *Batson v. Kentucky*, supra, 476 U. S. at 97; *Jackson v. State*, 265 Ga. 897 (2) (463 SE2d 699) (1995). An explanation is not racially neutral if it is based on "a characteristic that is peculiar to any race" (*Purkett v. Elem*, 514 U. S. 765 (115 SC 1769, 1771, 131 LE2d 834) (1995); *Jackson v. State*, supra, 265 Ga. at 899) or a stereotypical belief. *Congdon v. State*, 262 Ga. 683, 685 (424 SE2d 630) (1993). It is then for the trial court to determine, after considering the totality of the circumstances, whether the opponent of the strike has shown that the proponent of the strike was motivated by discriminatory intent in the exercise of the peremptory challenge. *Batson v. Kentucky*, supra, 476 U. S. at 98; *Dixon v. State*, 673 A2d 1220 (Del. 1996). The opponent of the strike may carry its burden of persuasion by showing that similarly-situated members of another race were seated on the jury. See, e.g., *Ford v. State*, 262 Ga. 558 (3) (423 SE2d 245) (1992). A trial court may also determine that improper discriminatory motive underlay the exercise of a peremptory challenge when the race-neutral explanation proffered by the strikes' proponent is so implausible or fantastic that it renders the explanation pretextual. *Purkett v. Elem*, supra, 115 SC at 1771; *State v. Adams*, 470 SE2d 366, 372 (S.C. 1996); *State v. Bryant*, 662 NE2d 846, 850, n. 1 (Ohio App. 1995). The trial court's findings concerning whether the opponent of the strike has carried the burden of persuasion are entitled to great deference and will be affirmed unless clearly erroneous. *Gamble v. State*, 257 Ga. 325 (5) (357 SE2d 792) (1987). However, the appellate courts will not act as a rubber stamp by accepting all purportedly non-racial explanations without exception. Id.

In explaining why it had struck the potential juror at issue in the case at bar, the State set forth three reasons: the venireman had filed bankruptcy proceedings, indicating an inability to handle finan-

cial matters; he had fathered an illegitimate child who had been raised by the child's mother, possibly making the venireman more sympathetic to appellant who had been raised by his mother without the presence of his father in the home; and the venireman was from Lenox, Georgia, and had acknowledged he was friendly with men the district attorney knew were serving time in federal prison on drug-trafficking convictions, as well as with men who frequently had been prosecuted for drug-related offenses.

Each of the three rationales proffered by the State is racially neutral since it is not based on a characteristic or stereotype peculiar to any race. *Jackson v. State*, supra, 265 Ga. at 899; *Congdon v. State*, 262 Ga. at 685. Appellant contends the trial court erred in its determination that the peremptory challenge was not based on racial animus[2] since there was no showing that one of the rationales for the strike (the venireman's inability to handle finances) was related to the case at bar; that the second rationale (the venireman who had fathered an illegitimate child who was raised without the venireman's presence in the household might be sympathetic at sentencing to the plight of appellant who was raised in a fatherless household by his mother) was based on a stereotypical belief that black fathers of illegitimate children lack commitment to family and society; and that the third rationale did not result in the removal of a white juror from Lenox. Appellant also asserts that the State failed to substantiate through its voir dire of the removed venireman the factual basis for its race-neutral reasons for removing him from the jury — whether the venireman's bankruptcy was personal or business-related; whether the venireman's child was illegitimate; the actual relationship the venireman had with the drug convicts and arrestees.

We must keep in mind that the reasonable suspicion of a juror's impartiality that prompts the exercise of a peremptory challenge need not rise to the level of justifying the removal of a venireman for cause. *Henry v. State*, 265 Ga. 732 (2) (462 SE2d 737) (1995). We must also keep in mind that the State's multiple rationales for the exercise of its strike were facially race-neutral and were supported by facts elicited during voir dire — the record reflects that venireman

---

[2] When faced with a *Batson* challenge, the trial court's ultimate ruling is a determination that the opponent of the strike established or did not establish that the proponent of the strike exercised the challenge with purposeful discriminatory intent. The trial court's penultimate decision is whether the proponent of the peremptory strike has given a race-neutral explanation for the exercise of the strike. In the case at bar, the trial court made only the penultimate ruling that the district attorney had given racially neutral reasons for the exercise of his peremptory challenge, and did not state that appellant had not proven that the challenge was exercised as a result of purposeful racial discrimination. Inasmuch as the trial court refused to set aside the exercise of the peremptory challenge, we infer that the trial court found no purposeful discrimination. See *State v. Harris*, 911 P2d 623 (Ariz. App. 1995).

had initiated bankruptcy proceedings, had fathered a child out of wedlock who was raised by the child's mother; did live within the city limits of Lenox; and was friendly with persons the district attorney knew to have been the subjects of criminal proceedings. Appellant, as the opponent of the exercise of the peremptory challenge, had the burden of showing the existence of discriminatory intent (*Batson v. Kentucky*, supra, 476 U. S. at 98), and appellant has not shown the existence of a stereotype concerning familial responsibility, much less that such a stereotypical belief was the force behind the prosecutor's peremptory challenge. Nor has appellant shown that there was a similarly-situated juror whose race was different from that of the venireman at issue who was not struck. Instead, appellant finds discriminatory intent in the prosecutor's failure to ask the other juror from Lenox about friendship with the drug offenders and arrestees. Appellant's assertion places the burden on the prosecutor to show that he did not have discriminatory intent when exercising his peremptory strikes. But that was not the prosecutor's burden; rather, it was appellant's burden to show discriminatory intent. The gap in the voir dire record on which appellant bases his claim of racial animus was formed by defense counsel's failure to ask the missing questions. Had they been asked and had answers been given showing disparate treatment, appellant would have evidence to support his claim of discriminatory intent. See, e.g., *Ford v. State*, supra, 262 Ga. 558 (3). The prosecutor's failure to ask questions does not evidence racial animus. We cannot say that the trial court was clearly in error in ruling that appellant failed to carry the burden of proving the prosecutor acted with discriminatory intent in exercising this peremptory challenge.

3. During his presentation of evidence, appellant's counsel sought to introduce, through the testimony of appellant's mother, a letter written to the witness by appellant's half-brother and co-indictee. In the letter, the writer admitted that he, not appellant, had fired the shot which killed the store clerk, and stated that appellant was not present when the crimes were committed. In a proffer, appellant's mother identified the letter as one slipped under the jail door to her by her other son after both men had been arrested, and identified the handwriting as that of her other son. The attorney representing the letter's author testified that he had advised his client to assert his constitutional privilege against self-incrimination should he be called to testify about the letter. Describing the letter as "classic hearsay," the trial court refused to admit it into evidence. On appeal, appellant contends the exclusion of the letter was a violation of his right to a fair trial, guaranteed him by the Due Process Clause of the Fourteenth Amendment to the U. S. Constitution.

In *Chambers v. Mississippi*, 410 U. S. 284, 302 (93 SC 1038, 35

LE2d 297) (1973), the U. S. Supreme Court concluded that a criminal defendant's right to a trial which met the traditional and fundamental standards of due process was violated when the trial court refused to admit hearsay testimony which "bore persuasive assurances of trustworthiness" and was critical to the defendant's defense. The court determined that the hearsay statements at issue in *Chambers*, which consisted of another person's admission to each of three witnesses that he, not the defendant, had committed the crime, were made "under circumstances that provided considerable assurance of their reliability. . . ." The court explained that each statement had been made spontaneously to a close acquaintance shortly after the crime had occurred; each was corroborated by other evidence in the case; each statement was self-incriminatory of the declarant; and the declarant was present in the courtroom, under oath, and subject to cross-examination. Id. at 300-301.

Citing *Chambers*, we recently remanded a case to the trial court because it was unclear from the record whether the trial court adequately considered the elements of reliability and necessity which require admission of hearsay evidence on due process grounds in exceptional circumstances. *Drane v. State*, 265 Ga. 255 (3) (455 SE2d 27) (1995). We expressly recognized in *Drane* that this type of evidence is generally inadmissible, but may be admitted under exceptional circumstances, and we set out the procedure to be followed when such evidence is proffered: the proponent of the hearsay must demonstrate the reliability and necessity of the hearsay evidence, and the trial court must fully consider that evidence when making its ruling pursuant to the analysis in *Chambers* and *Green v. Georgia*, 442 U. S. 95 (99 SC 2150, 60 LE2d 738) (1979).

Increasingly, trial courts are being faced with hearsay evidence proffered by defense counsel in an effort to demonstrate that someone other than the defendant is responsible for the crime for which the defendant is being tried. In light of the *Chambers* ruling, a trial court faced with such an evidentiary question should analyze the question in the manner customarily employed when any hearsay evidence is proffered under the "necessity" exception codified in OCGA § 24-3-1 (b).[3] Hearsay admitted pursuant to the necessity exception

---

[3] Georgia does not recognize a declaration against one's penal interest as an exception to the rule prohibiting the admission of hearsay evidence. *Guess v. State*, 262 Ga. 487 (2) (422 SE2d 178) (1992). Consequently, the co-indictee's letter is not admissible pursuant to that exception. Had the author of the letter testified, the letter might have been admissible as substantive evidence pursuant to the hearsay exception for prior inconsistent statements. *Guess v. State*, supra, 262 Ga. 487. That option is not available in the case at bar since the co-indictee/declarant was not called as a witness by either the State or appellant. Had the declarant been called to testify, his refusal to answer questions could not have served as the basis for admission of the letter as a prior inconsistent statement. See *Barksdale v. State*,

must have "particularized guarantees of trustworthiness," that is, it must be "coupled with circumstances which attribute verity to it. [Cits.]" *Roper v. State*, 263 Ga. 201 (2) (429 SE2d 668) (1993). If hearsay evidence meets that prerequisite, it more than likely was made "under circumstances that provided considerable assurance of [its] reliability" and bears "persuasive assurances of trustworthiness," thereby making its admission necessary under the Due Process Clause should it be critical to the defendant's defense. See *Chambers v. Mississippi*, supra, 410 U. S. at 302.

Since appellant's trial took place before the publication of our decision in *Drane*, neither defense counsel nor the trial court had the benefit of that ruling. Because we cannot determine whether the circumstances surrounding the creation of the hearsay statement in the case at bar support a conclusion that the letter bears "persuasive assurances of trustworthiness" or that it was made under circumstances providing considerable assurance of its reliability, we must remand the case to the trial court for consideration of the issue. Hearsay proponents in trials occurring after the publication of *Drane* must make a proffer in which the reliability and necessity of the hearsay evidence are thoroughly set out, and the trial court's ruling must reflect consideration of the proffered evidence and a determination that the evidence does or does not show "persuasive assurances of trustworthiness," or was made under circumstances providing considerable assurance of its reliability.

Should the trial court determine on remand that the letter should have been admitted, a new trial is in order. Should the trial court conclude that the letter was not made under circumstances which attribute verity to it, that it does not bear persuasive assurances of trustworthiness, or that the letter was not critical to the defendant's defense, appellant is authorized to file an appeal from the trial court's order within 30 days of that ruling.

4. Appellant next takes issue with the fact that the trial court imposed sentences of imprisonment on him for both the armed robbery and murder convictions. Appellant maintains that the armed robbery was a crime included in the murder as a matter of fact. See OCGA § 16-1-6.[4] We disagree. The State presented evidence from which the jury could conclude beyond a reasonable doubt that appellant intended to shoot and kill the victim: in his confession, appellant admitted holding the gun and pointing it at the victim, and the firearms expert testified that the murder weapon would not fire unless both safeties were disengaged and 10.5 pounds of pressure were

---

265 Ga. 9 (453 SE2d 2) (1995).

[4] It is undisputed that armed robbery is not an offense included as a matter of law in malice murder. *Lemay v. State*, 264 Ga. 263 (1) (443 SE2d 274) (1994).

applied to the trigger. From this evidence the jury was authorized to infer that appellant intentionally pulled the trigger while pointing the deadly weapon at the victim, and the intent to kill can be inferred from the intentional and unjustified use of a deadly weapon. See *Lemay v. State*, 264 Ga. 263, 265 (443 SE2d 274) (1994); *Thompson v. State*, 257 Ga. 481 (6) (361 SE2d 154) (1987).

5. Contrary to appellant's contention, his execution of an application for appointment of counsel did not constitute the invocation of the right to counsel for Fifth Amendment purposes. *State v. Hatcher*, 264 Ga. 556 (448 SE2d 698) (1994). Since no adversarial judicial criminal proceeding had been initiated against appellant at the time he applied for court-appointed legal representation, his Sixth Amendment right to assistance of counsel had not yet come into play. Id. *Roper v. State*, 258 Ga. 847 (375 SE2d 600) (1989), is not applicable in light of the State's concession in that case that the form the defendant filled out requesting an attorney was a sufficient invocation of the right to counsel. Id. at 859.

6. While in custody, appellant gave an incriminating statement to law enforcement officers. At the *Jackson-Denno* hearing held to determine the admissibility of appellant's statement, the State presented evidence that appellant was apprised of his rights under *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966), prior to being questioned by the officers and prior to giving his inculpatory statement. Appellant testified to the contrary. The trial court concluded that appellant had been advised of his rights, had waived those rights knowingly and intelligently, and had given voluntary statements to the officers. In the absence of evidence that the trial court's factual and credibility determinations were clearly erroneous, we uphold those determinations on appeal. *Anderson v. State*, 258 Ga. 70 (7) (365 SE2d 421) (1988).

*Judgment affirmed in part and remanded with direction in part. All the Justices concur.*

DECIDED OCTOBER 7, 1996.

*W. Boyd English,* for appellant.
*Richard E. Currie, District Attorney, Michael J. Bowers, Attorney General, Allison Goldberg, Assistant Attorney General,* for appellee.