Thompson, Justice.
Christopher Ryan Washington was convicted of felony murder, aggravated assault, and possession of a firearm by a convicted felon, in the shooting death of Tollie Mosley.[1] On appeal, Washington pri *599 marily asserts that the court erred in refusing to allow redaction of a portion of his custodial statement, and in giving certain jury instructions. Finding no error, we affirm.
Viewed in a light most favorable to the verdict, the evidence shows that Washington and co-defendant Robert Dennis Brown arranged to purchase marijuana from Tollie Mosley and Kwesi Haven. After preliminary negotiations, the four men drove in two cars to a residential neighborhood to conclude the transaction. Washington and Brown arrived in Washington’s car. Mosley and Haven were in the other vehicle. The two cars stopped. Brown and Haven switched places so that Washington and Haven were in one car, and Brown and Mosley were in the other.
The State’s theory of the case was that Washington and Brown were planning a robbery and never actually intended to purchase marijuana. Haven testified that just after he got into Washington’s car, he heard shots from the other car and observed that Brown had shot Mosley. At the same time, Washington pulled a pistol and demanded that Haven hand over the marijuana. Haven complied, and then fled from Washington’s car. Brown got into the vehicle with Washington and the two sped away. Mosley was found sprawled in the driver’s seat of his car with three gunshot wounds to his chest and shoulder, which resulted in his death. Haven was familiar with Washington and identified him as a perpetrator. Haven’s testimony was substantiated by the forensic evidence.
1. The evidence was sufficient to authorize a rational trier of fact to find Washington guilty beyond a reasonable doubt of the crimes for which he was convicted. Jackson v. Virginia, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979)
2. Washington voluntarily presented himself to the police for questioning. After being advised of his rights under Miranda and executing a waiver, he gave a lengthy interview which was tape-recorded. In that interview, Washington was asked whether he possessed a gun during his encounter with the victims. He responded that he did not because he was a convicted felon and he knew that he could not lawfully carry a gun. When the State sought to introduce the taped statement at trial, defense counsel objected to that portion concerning Washington’s convicted felon status on grounds that the evidence impermissibly placed his character in issue.
Washington’s reference to his status as a convicted felon was made during a custodial statement which contained admissions of guilt as to the charged crimes. He admitted that he transported *600 Brown to and from the crime scene in a car he had taken without permission of the owner; that he knew he was in the midst of a drug deal; and that after the shooting he drove Brown from the scene with the police in pursuit.
Garcia v. State, 267 Ga. 257 (4) (477 SE2d 112) (1996), is dispositive. “Although [Washington’s] statement is exculpatory insofar as he denied being the actual gunman, it was inculpatory of his guilt as a party to the crimes. Under those circumstances, the entirety of [the] statement was admissible.” Id. at 258. See also Walker v. State, 264 Ga. 79 (3) (440 SE2d 637) (1994) (portions of a statement which are an integral part of a criminal confession are not rendered inadmissible because the accused admitted committing another and separate offense); Frazier v. State, 257 Ga. 690 (14) (362 SE2d 351) (1987) (no error in admitting a complete confession which contained a reference to defendant’s “bad record”). It follows that the trial court correctly allowed Washington’s entire statement to be considered by the jury. Compare Felder v. State, 266 Ga. 574 (2) (468 SE2d 769) (1996) (where appellant’s statement was entirely exculpatory, reference to his parole status was not admissible as part of an incriminatory statement or confession); Robinson v. State, 192 Ga. App. 32 (383 SE2d 593) (1989) (where defendant strongly denied guilt, reference to independent crimes which had no connection to the conduct on trial was inadmissible).
3. When the State sought to introduce Washington’s taped statement, the prosecutor requested permission to give each member of the jury a transcript so they could read along as they listened to the tape. Defense counsel objected on the basis that the transcript was not shown to have been prepared by a certified court reporter. The interrogating officer testified to the circumstances under which the tape was made, its chain of custody, and the accuracy of the recording. The trial court carefully instructed the jury that only the taped conversation was evidence; and the transcript, which was “not evidence,” was provided only to permit the jurors to follow as they listened to the recording. Finally, the jurors were instructed that they had to determine for themselves what they actually heard on the tape. “With such a foundation being laid and such safeguards utilized, there was no error in permitting the use of the transcripts.” Guess v. State, 264 Ga. 335, 336 (2) (443 SE2d 477) (1994). Nor was it error for the trial court to permit the jurors to read the transcript while listening to the tape simply because a certified court reporter did not prepare the transcript. Murphy v. State, 267 Ga. 100 (475 SE2d 590) (1996), relied on by Washington, does not constitute authority for a contrary conclusion.
4. Washington also asserts error in permitting the prosecutor to read excerpts of the tape transcript during closing argument for the *601 reason that the transcript was not in evidence. We disapprove the practice of allowing a prosecutor to read any document not in evidence during closing argument. Our review of the record shows that the prosecutor argued in closing that Washington’s responses to certain questions posed during his custodial interrogation were not truthful. The tape transcript was used by the prosecutor as an aid in recalling those questions and Washington’s responses thereto. The transcript was not distributed to the jury at this time, nor was it sent to the jury room during deliberations. Any error in this regard was rendered harmless by the careful limiting instruction previously given to the jury.
Decided November 3, 1997.
June E. Fogle, for appellant.
Spencer Lawton, Jr., District Attorney, Jon C. Hope, Assistant District Attorney, Thurhert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Deborah L. Gale, Assistant Attorney General, for appellee.
5. The trial court properly refused to give Washington’s requested jury instruction on voluntary manslaughter as there was no evidence that the shooting was preceded by serious provocation. Davis v. State, 266 Ga. 801 (6) (471 SE2d 191) (1996). And, although the evidence established that Mosley was armed with a pistol, there was no evidence of a mutual intention or agreement to fight as would authorize a charge on mutual combat. See Sinkfield v. State, 266 Ga. 726 (2) (470 SE2d 649) (1996).
6. The court did not err in giving a jury charge on the law of conspiracy. A person commits a conspiracy when “he together with one or more persons conspires to commit any crime and any one or more of such persons does any overt act to effect the object of the conspiracy.” OCGA § 16-4-8. “A conspiracy may be inferred from ‘the nature of the acts done, the relation of the parties, the interest of the alleged conspirators, and other circumstances.’ [Cit.]” Agnew v. State, 267 Ga. 589, 590 (2) (481 SE2d 516) (1997). The trial evidence established that Washington and Brown set out together to purchase two ounces of marijuana; both were armed with a pistol; Brown repeatedly shot Mosley; Washington held Haven at gunpoint; and Washington picked up Brown before they fled the scene. A charge on the law of conspiracy was authorized by the evidence. Drane v. State, 265 Ga. 255 (4) (455 SE2d 27) (1995).

Judgment affirmed.

All the Justices concur.

 The crimes occurred on July 28, 1995. A true bill of indictment was returned on May 22, 1996, charging Washington with malice murder, felony murder with the underlying offense of aggravated assault, armed robbery, possession of firearm during commission of a felony (two counts), aggravated assault (two counts), and possession of firearm by a convicted felon. Trial commenced on June 10, 1996, and on June 13, 1996, Washington was found guilty of felony murder, and aggravated assault on Mosley. In a bifurcated proceeding, he was also found guilty of possession of a firearm by a convicted felon. Washington was sentenced on June 24, 1996 to life imprisonment for felony murder, and a concurrent sentence of five years for the firearms possession conviction. The conviction for aggravated assault of the murder victim merged into the felony murder conviction. A motion for new trial was *599 filed on June 27,1996, and amended on March 24, 1997. The motion was denied on April 8, 1997. A notice of appeal was filed on April 16,1997. The case was docketed in this Court on May 15,1997, and was submitted for decision on briefs on July 7,1997.