## A99A1294. JONES v. THE STATE.

(523 SE2d 402)

RUFFIN, Judge.

A jury found Audley Jones guilty of burglary. Jones argues on appeal that the trial court improperly denied his *Batson* challenge and allowed the State to strike a black juror because of her race. In the alternative, Jones argues that the same juror was impermissibly struck because of her disability. Finally, he asserts that the trial court erred in failing to declare a mistrial when the prosecutor made improper remarks to the jury during voir dire. We reject all three arguments and affirm.

1. The jury for Jones' trial was selected from thirty persons, seven of whom — or approximately twenty-three percent — were black. The State exercised five of its twelve peremptory challenges and used four of those five — or eighty percent — to strike black venirepersons. The State accepted three black jurors, one of whom was struck by Jones. The final jury — consisting of two blacks, ten whites, and one white alternate — was 16.7 percent black.

Jones challenged the State's strikes as racially discriminatory under *Batson v. Kentucky*.[1] Based on the high percentage of black jurors struck by the State, the trial court found that Jones established a prima facie case of racial discrimination and required the prosecutor to state his reasons for the strikes. The prosecutor offered reasons satisfactory to Jones for striking three of the four black jurors. But as for the fourth black juror, Lizzie Hood, Jones argued that the prosecutor's stated reasons were pretextual.

The questioning of juror Hood during voir dire was as follows:

> HOOD: My name is Lizzie Hood. I'm disabled. My husband name Milton. He's dead. I got four children, two dead, two living. My oldest child is 29. Daughter is 22. And I never did serve on a jury.
> [PROSECUTOR]: Ma'am, did your family move here from the Lexington area from Oglethorpe County?
> HOOD: No sir.
> [PROSECUTOR]: That's just where you were born?
> HOOD: I was born in Oglethorpe, Lexington, Georgia.
> [PROSECUTOR]: What brought your family to Athens?
> HOOD: All my children were born in Athens.
> [PROSECUTOR]: Had to come be with the children?
> HOOD: I moved from Oglethorpe in '69.
> [PROSECUTOR]: Are you the member of any social, business, or religious organizations?

---

[1] 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986).

> HOOD: No.
>
> [PROSECUTOR]: How is your 29-year-old child employed?
>
> HOOD: How he go? He's on his own.
>
> [PROSECUTOR]: What does he do for a living?
>
> HOOD: He works over there at the University.
>
> [PROSECUTOR]: And your 22-year-old?
>
> HOOD: My daughter?
>
> [PROSECUTOR]: Yes.
>
> HOOD: She work at Seaboard Poultry at night.
>
> [PROSECUTOR]: Thank you, ma'am.
>
> [DEFENSE]: Ms. Hood, anything you'd answer differently?
>
> HOOD: No.
>
> [DEFENSE]: You think you could be fair and impartial?
>
> HOOD: Yes, I would.
>
> [DEFENSE]: And follow the Judge's instructions on the law?
>
> HOOD: Yes.
>
> [DEFENSE]: Just follow the facts closely?
>
> HOOD: (No audible response.)
>
> [DEFENSE]: Thank you, ma'am.

The prosecutor offered two reasons for striking Hood. His "main reason" was his concern that she might be overly sympathetic to Jones. As he put it,

> Ms. Hood indicated during voir dire that first of all she was disabled. Second of all her husband was deceased. And third she had lost two children in her lifetime. The fact that she has gone through these events in her life, I have a fear that she has, she's going to have some type of sympathy or overwhelming feeling towards persons that might play a factor in the case, and I struck her because of the negative impact she's had in her lifetime. . . .

Later, the prosecutor added:

> I want to make sure the record is clear because I'm not sure [defense counsel] heard this. Ms. Hood indicated that not only had she lost her husband, she'd lost two of her children. She only has two children remaining in life. My gut instinct tells me that people, people like that can have a tendency to be sympathetic toward people who have hard times which [sic] as Mr. Jones has right now. And that he's facing a trial. And for that reason I struck her because of the potential of

sympathetic feelings because of her own hard times that
she's had.

In addition, the prosecutor stated that "Ms. Hood had difficulty in
understanding some of my questions, and I had to rephrase them
several times in getting her to answer those questions." Accordingly,
the prosecutor expressed concern that Hood "might have the same
difficulties of the questions being asked witnesses."

The trial judge upheld the State's striking of Hood. The judge
stated that he understood the prosecutor to be saying that he had
struck Hood because of a concern that her overall life circumstances
would make her more sympathetic to people "battling it out and hav-
ing a hard time in life," like Jones. The judge also noted that the
prosecutor felt Hood could not understand his questions, but the
judge did not express an opinion as to Hood's responsiveness.

Assuming Jones established a prima facie case of race discrimi-
nation under *Batson*,[2] the burden shifted to the State to "set forth a
race-neutral, case-related, clear and reasonably specific explanation"
for striking Hood.[3] That reason did not have to be persuasive or even
plausible, but only one that did not deny equal protection.[4] Jones
bore the ultimate burden of persuading the trial court that the State
acted with discriminatory intent.[5] Jones could carry this burden by
(1) showing that the State did not strike similarly situated white
jurors or (2) showing that the State's explanation for the strike was
"so implausible or fantastic that it render[ed] the explanation pretex-
tual."[6] In determining whether Jones met this burden, we are
required to give "great deference" to the factual findings of the trial
court, and we may disregard them only if they are clearly erroneous.[7]

We first examine whether the prosecutor's main explanation for
striking Hood — his fear that she might be overly sympathetic to
Jones — was facially race-neutral. We agree with the trial court that
it was, because people of any race can experience hardships in life.
Jones does not argue otherwise on appeal. Of course, we are not
required to accept an explanation for a peremptory strike simply
because it is facially race-neutral. If the explanation was "so implau-
sible or fantastic" that it could not be believed, then we assume that

---

[2] The preliminary issue of whether he established a prima facie case is moot because
the prosecutor offered explanations for his strikes and the trial court ruled on the ultimate
issue of intentional discrimination. See *Parker v. State*, 219 Ga. App. 361, 362 (1) (464 SE2d
910) (1995).

[3] *Ware v. State*, 232 Ga. App. 165, 166 (2) (500 SE2d 601) (1998).

[4] *Berry v. State*, 267 Ga. 605, 608 (5) (481 SE2d 203) (1997).

[5] *Turner v. State*, 267 Ga. 149, 151 (2) (476 SE2d 252) (1996).

[6] Id.

[7] *Lingo v. State*, 263 Ga. 664, 666 (1) (b) (437 SE2d 463) (1993).

race was the real reason for the strike.[8] Here, however, we conclude that Jones failed to carry the ultimate burden of showing that the prosecutor's race-neutral explanation could not be believed.

In evaluating the persuasiveness of the prosecutor's explanation, we are concerned only with "whether the trial court's credibility determination that racial motivation did not exist was clearly in error."[9] The prosecutor explained that he thought Hood's hardships might predispose her to sympathy for a criminal defendant, and the trial court — who had the better opportunity to observe the prosecutor's demeanor and assess his credibility — believed him. After reviewing the transcript, we are unable to find clear error in the trial court's conclusion that the explanation was believable.

Jones argues that the explanation was pretextual because Hood's disability and the death of her husband and two children bore no relation to any issue in the burglary case.[10] Although explanations for peremptory strikes must be reasonably case-specific, we have not required the proponent of the strike to draw a direct link between the characteristic of the juror that prompted the strike and particular facts in the case. In *Parker v. State*,[11] for example, we accepted a prosecutor's explanation that he struck a juror because he was a criminal justice major and would likely "take a microscopic view of the evidence, have an extremely narrow perspective of reasonable doubt, and therefore not be a good State's juror." Such an explanation would readily apply in any criminal case. Likewise, we have upheld strikes of jurors based on their employment status,[12] age,[13] and family situations,[14] based solely on the prosecutor's apparent general preference for older, stable, conservative jurors. While an explanation for a strike must bear on an individual's ability to serve impartially as a juror in the case, it need not be tightly linked to specific details in that case.

Jones also argues that the prosecutor failed to ask more specific questions to find out if his assumptions about Hood's sympathies were, in fact, founded. Certainly, the prosecutor's explanation is based on stereotypical thinking that a person who has suffered hardships is more likely to be sympathetic. But this is not racially stereo-

---

[8] *Turner*, supra at 151.

[9] (Punctuation omitted.) *Hudson v. State*, 234 Ga. App. 895, 899 (2) (508 SE2d 682) (1998).

[10] The charge against Jones stemmed from a residential break-in that was interrupted by the homeowner. Jones' defense at trial was that the homeowner mistakenly identified him as the burglar.

[11] Supra at 362.

[12] See *Gilbert v. State*, 226 Ga. App. 230, 231 (486 SE2d 48) (1997).

[13] See *Robert v. State*, 227 Ga. App. 26 (488 SE2d 105) (1997).

[14] See *Turner*, supra at 152-153.

typical thinking.[15] Jones has the burden to show that the prosecutor's reason was implausible or fantastic, and he cannot carry that burden merely by pointing to the prosecutor's reliance on a non-racial stereotype.[16] In *Turner v. State,* the Supreme Court stated that "[t]he prosecutor's failure to ask questions does not evidence racial animus."[17] Perhaps Jones' attorney could have elicited evidence of discriminatory intent — assuming such intent existed — through further questioning of Hood or of other jurors on the panel. But he did not, and so there is no evidence that the explanation is so implausible that it must have been a ruse.

Moreover, we must consider the plausibility of the prosecutor's explanation in light of the reasons he gave for other peremptory strikes and in light of the strength of the prima facie case of discrimination.[18] "The persuasiveness of a proffered explanation may be magnified or diminished by the persuasiveness of companion explanations, and by the strength of the prima facie case."[19] Both of these factors weigh against Jones.

First, the prima facie case was weak. Although the prosecutor exercised four of five peremptory strikes on black venirepersons, he accepted three black jurors — even though he had ample strikes remaining. The percentage of blacks on the jury chosen (16.7 percent) was somewhat close to the percentage of blacks in the jury pool (23 percent), and would have been even higher if Jones had not struck one of the black jurors accepted by the prosecutor.

Second, the prosecutor's explanations for his other strikes of black jurors were race-neutral and plausible. The prosecutor struck one black juror because he had a pending criminal charge against him in the same county; another black juror because she admitted feeling partial toward a defendant who had recently been prosecuted by Jones' prosecutor; and a third black juror because he wanted to reach the next juror on the panel, who was young, conservative, and married with children. Jones' attorney admitted that all three of these reasons were legitimate, and he did not challenge the strikes of those jurors. Thus, when viewed as a whole, the jury selection in this

---

[15] See *Smith v. State,* 232 Ga. App. 458, 460 (1) (501 SE2d 622) (1998) (inquiry is whether strike "was based on a characteristic or stereotype *peculiar to any race*") (punctuation omitted; emphasis supplied).

[16] See *Knuckles v. State,* 236 Ga. App. 449, 452-453 (1) (b) (512 SE2d 333) (1999) (upholding prosecutor's strike of juror with nose ring because such an "unconventional method[ ] of self-adornment . . . may indicate youthful rebellion against authority and convention, or anti-social attitudes, or identification that would extend across gender and racial lines").

[17] Supra at 153.

[18] *Kelly v. State,* 209 Ga. App. 789, 792 (1) (434 SE2d 743) (1993); *Gamble v. State,* 257 Ga. 325, 327 (5) (357 SE2d 792) (1987).

[19] Id.

case was not tainted by racial animus. Accordingly, the prosecutor's reasons for striking juror Hood were not required to be airtight.[20]

In sum, the prosecutor gave a race-neutral reason for exercising a peremptory strike against Hood. Because the trial court did not clearly err in finding that Jones failed to carry his burden of showing that the prosecutor's explanation was too fantastic to be believed, we find no *Batson* violation.

2. Jones also contends that the prosecutor impermissibly struck juror Hood because of her disability. Whether a peremptory strike based on a juror's disability runs afoul of the equal protection clause appears to be an issue of first impression in this Court. Assuming, without deciding, that a strike based on disability would violate *Batson,* we uphold the trial court's conclusion that the prosecutor did not, in fact, strike Hood because of disability.

During voir dire, juror Hood described herself as "disabled." That was the first statement she made, after giving her name, and she volunteered it without any prompting by the attorneys or the trial court. Hood did not explain the nature of her disability or how it might affect her jury service, and it appears from the transcript that whatever disability she may have is not readily apparent. In the same introductory statement, Hood explained that her husband and two of her children were deceased.

During the *Batson* hearing, Jones' attorney protested that the prosecutor had struck Hood because of her disability, which was "completely irrelevant unless she has indicated some reason why she for a physical reason could not serve." The trial court found that the prosecutor struck Hood not because of her disability, but because of his concern that the pattern of hardships — which apparently included a disability of some kind — that Hood immediately revealed during voir dire might predispose her to be sympathetic to the defense:

> Well, now, here's how I interpreted it. You can't strike somebody because they're disabled. Correct me if I'm wrong. I interpreted it [that the prosecutor] means that he said sympathy because of her overall condition. Disabled or what. . . . [H]e says he struck her he felt because she would have sympathy for the Defendant because of the Defendant's being battling [sic] it out and having a hard time in life. . . .

---

[20] See *Knuckles,* supra at 452 (1) (b) ("[W]here the prima facie case is not strong, and there are minorities on the jury, the reasons given do not have to be as strong . . . for the trial court to accept the reasons as racially neutral.").

We cannot say that the trial court's interpretation of the prosecutor's explanation is clearly erroneous.

After the prosecutor stated his neutral explanation for the strike, Jones bore the burden of proving that the explanation was really a pretext for discrimination. As discussed in Division 1, Jones failed to carry that burden. Accordingly, the trial court properly denied his *Batson* challenge.

3. Finally, Jones argues that the trial court erred by failing to declare a mistrial after the prosecutor referred to the fact that defense counsel worked for Legal Aid. Whether to grant a mistrial is within the discretion of the trial court, and we will not disturb the trial court's ruling unless a mistrial was required to preserve the defendant's right to a fair trial.[21] We find no abuse of discretion here.

During voir dire, the prosecutor asked the panel as a whole if they knew anything about the case or any of the attorneys involved in it. Specifically, the prosecutor asked:

> Other than your brief contact with him this morning, do any of you know Mr. Fieman, the Defendant's defense attorney? This case involves a burglary that took place on February the 22nd of 1998, off of West Hancock Avenue. Do any of you know anything about this particular case? Mr. Fieman is employed with the Legal Aid Clinic here in Athens — .

At that point, defense counsel objected and requested a bench conference, at which he moved for a mistrial on the ground that the prosecutor's comment prejudicially suggested to the jury that Jones was indigent. The prosecutor responded that he was merely inquiring whether the jurors knew anyone who worked in defense counsel's office. The trial court then instructed the jurors to disregard what they had heard about defense counsel's place of employment, told the jurors that such information was not relevant to the case, and asked whether any juror would hold against Jones the fact that he was being defended by the Legal Aid Office. No juror raised a hand. The trial court then denied Jones' motion for a mistrial.

The Supreme Court has previously ruled that a prosecutor's references to the fact that a defendant had appointed counsel did not prejudice the defendant.[22] Here, the record shows that the prosecutor's reference to Legal Aid was not gratuitous, but was made while asking whether the prospective jurors knew one of the attorneys in defense counsel's office — a legitimate line of inquiry. Moreover, the trial court gave a prompt and thorough curative instruction. Under

---

[21] *Jones v. State*, 267 Ga. 592, 596 (3) (481 SE2d 821) (1997).
[22] Id.; *Holiday v. State*, 258 Ga. 393, 398 (11) (b) (369 SE2d 241) (1988).

these circumstances, the trial court did not abuse its discretion in failing to grant a mistrial.

*Judgment affirmed. McMurray, P. J., and Andrews, P. J., concur.*

DECIDED OCTOBER 13, 1999 — 

*Colin A. Fieman*, for appellant.

*Harry N. Gordon, District Attorney, Michael E. Eberhardt, Assistant District Attorney*, for appellee.