A93A1378. KIRK v. THE STATE.
(436 SE2d 553)

BEASLEY, Presiding Judge.

Kirk was indicted for armed robbery, OCGA § 16-8-41 (a), by means of a handgun or something having the appearance of a gun. A jury convicted him of the lesser offense of robbery by intimidation,

---

OCGA § 16-8-40 (a) (2). Following the denial of a new trial, Kirk challenges his conviction on two bases: The State was erroneously permitted to place his character in issue by the irrelevant testimony of its police witness; the jury was erroneously instructed that before it could consider the lesser offense of theft by taking, it had to reject a finding of guilt of armed robbery and robbery by intimidation.

The evidence construed in favor of the verdict showed the following. At about 2:45 a.m. on September 14, 1991, Wright was performing his job of cleaning a grocery store parking lot when he noticed a car come into the lot, "flying around" the back of the store. Wright kept on working and as he was putting the blower back on his truck, the car pulled in behind him and driver Kirk asked Wright if the grocery store was open. After Wright responded that he thought it was open 24 hours a day, Kirk backed his car away from Wright's truck. Wright got in his truck and started the engine. As Wright was looking out the open driver's door on his truck, Kirk exited his car, told Wright he had a dead battery, and asked if Wright had jumper cables. Wright was not really paying any attention to Kirk, and Kirk got in the passenger side of Wright's truck. The truck door had been locked but the window had been down.

Kirk "got real close" to Wright and Wright felt Kirk stick what he thought was a metal object in his side. Kirk told Wright it was a gun and to give him all his money. Wright responded that he had no money, only a gasoline credit card. Kirk asked for other credit cards and said he wanted to go to Wright's house. Kirk looked through Wright's wallet and instructed Wright to drive around to the back of the parking lot. On the way, they saw a police officer in his vehicle. Kirk told Wright to "keep [his] mouth shut" or he "would blow [him] away." The officer was used to seeing Wright's truck at the shopping center and was familiar with Wright. Not thinking anything suspicious was afoot, the officer waved.

Kirk instructed Wright to return him to his car, which Wright did. Wright parked the truck, remembered that he had two $5 bills, and gave them to Kirk. Kirk exited and took the truck keys with him. As Kirk walked around the front of the truck, "he stuck something down his pants." He hopped in his car and left, saying he was going to throw Wright's keys in the grass somewhere. Wright went into the grocery store and called the police.

Having observed Kirk during the five to ten-minute encounter in the brightly lit parking lot, Wright was able to give a detailed description of his assailant to the police as well as the make of Kirk's car and a partial license tag number. A short time later and not far from the crime scene, an officer spotted a vehicle fitting the description given by Wright parked by the side of a gasoline station. The officer called for back-up. He positioned his vehicle so that as Kirk got in his car

and exited the lot Kirk did not see him.

The officer and a back-up fell in behind Kirk's car and followed for a short distance. The officer turned on the patrol car's blue light and Kirk drove into another gasoline station lot. The officer pulled up beside Kirk's car and the back-up pulled directly in front. The officers drew their weapons and ordered Kirk out of the vehicle, telling him to place his hands on the steering wheel where they could see them. Kirk placed his hands on the steering wheel for "approximately a second" and then reached back under the seat. The officers believed Kirk was behaving that way and not wanting to exit his car because he had a weapon. A four or five-minute stand-off ensued with Kirk continuing to put his hands under the front seat of the car. More officers arrived and extracted Kirk from his vehicle. A short time later, Wright was able to positively identify Kirk as the robber.

When the officers removed Kirk from his car, they noticed that his right hand was cut. In searching under the front seat of Kirk's car, an officer found a bloody crushed glass tube, four or five inches long, with one end stuffed with a scouring pad. No gun was ever found.

At trial, after denial of defendant's motion in limine and over defendant's continuing objection, the officer testified about finding the glass tube. He testified further that based on his experience as a narcotics detective, it was his opinion that the glass tube was one used to smoke crack cocaine and was called a "straight-shooter."

Kirk did not claim misidentification or alibi. He admitted the encounter with Wright but denied that he robbed him, maintaining instead that Wright had become angry because he had dumped trash from his car in the lot and that in retaliation he (Kirk) had obtained Wright's truck keys and thrown them into the grass. Kirk also denied knowing anything about the glass tube and claimed that he had cut his hand on a broken arm rest in his car.

1. Kirk contends that the officer's testimony about the tube was irrelevant, lacked probative value, and impermissibly placed his character in issue. He argues that the mere mention of "crack pipe" eroded the presumption of innocence by implying to the jury that he was guilty of other crimes such as cocaine possession and that his situation is analogous to that in *Racquemore v. State*, 204 Ga. App. 88 (418 SE2d 448) (1992).

Kirk filed a pretrial motion in limine seeking to exclude testimony about the tube, for the reasons now advanced, and others. The State responded, as it does now, that evidence of the object was admissible as a circumstance of the arrest. The motion was addressed as a threshold matter just prior to the start of trial, and after considering the arguments of counsel and a transcript of the preliminary hearing, the court ruled it would allow evidence that Kirk was breaking up the glass pipe, and that if a proper foundation were laid, opinion evi-

dence regarding its use would be allowed.

In *Racquemore*, the objected-to testimony, i.e., a State's witness testifying that defendant had related that he was on probation and living at a half-way house, served no legitimate purpose in the presentation of the case. It was not, as the State contended, material or admissible on the issue of motive, intent or course of conduct, nor was defendant's statement properly considered as part of the res gestae of the crime. Moreover, the "limiting" instruction given by the court was not appropriate. *Racquemore* at 89 (2). It was necessary to reverse Racquemore's conviction because his general character had been called into issue and a proper cautionary instruction had not been given. This case differs.

" '(A)rticles found in the control of the defendant at the time or near the time of arrest . . . are admissible as circumstances connected with the arrest of the defendant.' [Cits.]" *Byers v. State*, 204 Ga. App. 552, 554 (2) (420 SE2d 23) (1992). "Surrounding circumstances constituting part of the res gestae may always be shown to the jury along with the principle fact, and their admissibility is within the discretion of the trial court. [Cit.] . . . [A]ll circumstances surrounding an arrest are admissible for whatever value the jury desires to place on them. [Cits.]" *Fuqua v. State*, 183 Ga. App. 414, 419 (359 SE2d 165) (1987). Defendant's arrest occurred within 45 minutes of the crime, while he was in the same car, and he was immediately identified by the victim.

The relation of the bloody and broken tube to the State's case made the testimony relevant. Kirk's delay in coming out of his car and his actions in the car and the blood on his hand were explained by the presence of the bloody, broken glass tube. It was reasonably inferable that he broke it up so that police would not see what it was, because they would know it was the type of article used for smoking crack. The testimony that it was defendant's activity with the glass tube which delayed his coming out of his vehicle and necessitated his extraction from it was relevant as a circumstance of the arrest. The opinion of the officers that the glass tube was used to smoke crack and was called a "straight-shooter" was relevant as establishing a motive for the robbery, i.e., a need for money to buy crack. That this incidentally put defendant's character in evidence does not render it inadmissible. *Millis v. State*, 196 Ga. App. 799 (1) (397 SE2d 71) (1990).

Appellant's argument that the testimony also constituted inadmissible evidence of other crimes, citing USCR 31, lacks merit. This was not evidence of a "similar transaction" so as to fall within the notice requirements of USCR 31.3.

2. Error is enumerated in the instruction to the jury that before it could consider the lesser offense of theft by taking, it had to reject the

other charges of armed robbery and robbery by intimidation. Relying on *Edge v. State*, 261 Ga. 865 (2) (414 SE2d 463) (1992) and *Taylor v. State*, 262 Ga. 584 (422 SE2d 430) (1992), which applied *Edge*, appellant argues that such a "sequential" charge was prohibited. He urges appellate review pursuant to OCGA § 5-5-24 (c), because he did not object to the charge at trial nor reserve later objection. In fact, at the charge conference, he implied agreement with this approach. Application of the rule enunciated in *Edge* "depend[s] on the preservation of the issue for appellate review. . . ." *Taylor*, supra at 586 (3). See also *Wilson v. State*, 262 Ga. 588, 590 (2) (b) (422 SE2d 536) (1992). Thus, the requirement of objection to the charge or reservation thereof is not avoided by the coverage of OCGA § 5-5-24 (c).

Moreover, the sequential charge disapproved in *Edge* is specific to the context of felony murder and voluntary manslaughter. The charge was rejected in order to accommodate the principle that "if there is but one assault and that assault could form the basis of either felony murder or voluntary manslaughter, a verdict of felony murder may *not* be returned if the jury finds that the assault is mitigated by provocation and passion." *Edge* at 866. Under such circumstance, the sequential charge is not appropriate, for it "eliminates the jury's full consideration of voluntary manslaughter because, if it concludes a felony murder occurred, it would not then go on to consider evidence of provocation or passion which might authorize a verdict for voluntary manslaughter." Id. at 867. The rationale has not been applied to the relation between theft by taking and the crime of armed robbery or robbery by intimidation, and we perceive no reason to do so. Unlike felony murder and voluntary manslaughter, the jury's consideration of armed robbery or robbery by intimidation would not eliminate evidence which might authorize instead a verdict for theft by taking.

*Judgment affirmed. Cooper and Smith, JJ., concur.*

DECIDED OCTOBER 5, 1993.

*Mitchell D. Durham*, for appellant.
*Thomas J. Charron, District Attorney, Debra H. Bernes, Nancy I. Jordan, Assistant District Attorneys*, for appellee.