A03A2150. DAVIS v. THE STATE.
A03A2151. STEPHENS v. THE STATE.
(590 SE2d 192)

PHIPPS, Judge.

A multi-count indictment was returned charging Deangelo T. Davis, Derrick Stephens, Anthony Adams, Raymond Broughton, and Earnest Wilson with having committed various crimes against Stacey Powers and Kim Duncan. Adams, Broughton, and Wilson pled guilty prior to trial; and Wilson testified at trial on behalf of the state. Davis and Stephens were tried jointly and convicted of armed robbery (two counts each), burglary, and possession of cocaine. Davis was also convicted of aggravated assault and possession of a firearm during the commission of a crime (two counts). Both Davis and Stephens moved for a new trial. The issue of ineffective assistance of trial counsel was raised at the hearing on the motions. The trial court denied the motions.

In Case No. A03A2150, Davis appeals. In Case No. A03A2151, Stephens appeals. They challenge the sufficiency of the evidence to support their convictions, the trial court's denial of their requests for funds to hire an independent investigator, the admission in evidence of the cocaine they were charged with possessing, certain jury instructions, and the effectiveness of their trial lawyers. Additionally, Davis contends that the trial court erred in denying him the right to make an opening statement, and Stephens complains of the admission of a pretrial statement he made to police. Finding no basis for reversal in either case, we affirm the judgments.

---

1. We find no merit in either Davis's or Stephens's challenge to the sufficiency of the evidence.

The state's evidence showed that Powers was living with his girlfriend Duncan in Colbert in May 1999. Powers, a former drug dealer, operated a car detailing shop. In the early morning hours of May 20, several males broke into the residence he and Duncan were occupying, rousted them from their sleep, bound and partially blindfolded them, and threatened to kill them if they did not give them all of the money and drugs on the premises. At the time, both Powers and Duncan were nude. Although neither of them could positively identify any of their assailants, Duncan observed that one of them was wearing black and white All Star Converse tennis shoes. Duncan testified that that man ripped a ring from her finger, and repeatedly kicked her and hit her in the back of the head with a gun. Powers testified that he was stomped, punched, and beaten over his entire body by one of the other men. Unable to find any drugs, the intruders fled in a Jeep Cherokee after stealing money, clothing, household furnishings, and a handgun. Duncan and Powers quickly unbound themselves, grabbed a shotgun, and, still nude, began to pursue their fleeing assailants in a car. They soon spotted the Jeep with their stolen possessions in the back window. During a chase from Colbert to Athens, gunfire was exchanged between the occupants of the two vehicles. In Athens, the victims' car became disabled, and they telephoned the police and obtained clothing. They provided a description of the Jeep as well as its tag number.

A police officer spotted the Jeep in Athens and followed it more than ten miles. During the officer's pursuit, he observed various items being thrown from the Jeep. The Jeep was eventually stopped by police at a roadblock. Stephens was identified as the driver. He had head wounds caused by shotgun pellets. Davis was identified as the front seat passenger. He was wearing tennis shoes of the type described by Duncan, and a large amount of money was found in his possession. Items of personal property stolen from Duncan and Powers were found by police in the Jeep and along that part of the roadway traveled by the Jeep. A package of cocaine and various handguns were among the found items. A large amount of currency identified as that taken from the victims was also found in the possession of Davis and his cohorts. Wilson's testimony corroborated Duncan's claim that Davis was in possession of a handgun during his invasion of her home.

Under the standard set forth in *Jackson v. Virginia*,[1] this evidence authorized any rational trier of fact to find beyond a reason-

---

[1] 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

able doubt that Davis and Stephens burglarized the residence occupied by Duncan and Powers; that, once inside, they took money, clothing, and other personal property from Duncan and Powers by use of a gun; that Davis also committed an aggravated assault on Duncan by striking her in the head with a handgun and was, therefore, in possession of a firearm during the commission of a crime; and that Davis and Stephens, along with the other occupants of the Jeep, had been in possession of the cocaine found along the roadway.

2. We find no merit in Davis's contention that the trial court erred in denying him the right to make an opening statement.

At the beginning of the trial, counsel for Davis reserved his right to make an opening statement until the close of the state's evidence.[2] Because neither Davis nor Stephens testified or presented any other evidence after the state rested, the trial court ruled that Davis's attorney could make a closing argument but not an opening statement. Because the purpose of opening statement is to give the jury and the court an outline of the evidence that the party anticipates presenting,[3] we find no harm.[4] Contrary to argument advanced by Davis, the trial court was under no obligation to warn defense counsel at the outset of the trial that opening statement at the close of the state's evidence would be inappropriate if no additional evidence were to be introduced.

3. Davis and Stephens also contend that the trial court erred in refusing to hold an ex parte hearing on their motion for funds to hire an independent defense investigator and in denying the motion.

Davis, Stephens, and Wilson, as indigent defendants, filed pretrial motions for funds to hire a defense investigator. It is undisputed that prior to trial the court conducted an unreported ex parte hearing with all defense counsel present; that, through the grant of Wilson's motion, the court ordered expenditure of $1,500 for a defense investigator; and that the investigator hired by Wilson was supposed to have shared information with the other defense attorneys. Shortly before trial, Broughton, Adams, and Wilson pled guilty, and Wilson appeared as a state's witness at trial. After the jury selection at trial, counsel for Davis requested additional funds to hire an investigator, stating that he and Stephens's attorney had received nothing from the investigator hired by Wilson, and that they therefore needed an investigator to obtain certified copies of Wilson's felony convictions for impeachment purposes. The prosecuting attorney thereupon informed the court that the state had already furnished defense counsel with Wilson's conviction record. Counsel for Stephens

---

[2] See Uniform Superior Court Rule 10.2.
[3] *Miller v. State*, 243 Ga. App. 764, 766 (7) (533 SE2d 787) (2000).
[4] See *Mason v. State*, 197 Ga. App. 534 (1) (398 SE2d 822) (1990).

acknowledged that although receipt of certified copies of Wilson's prior convictions "would solve that problem," the defense was also in need of Powers's criminal record. Counsel for Davis added that both the state and the defense needed to place Powers under subpoena, as his whereabouts were unknown. The court, however, denied the defense request as untimely. As a result, Davis's attorney later represented to the court that defense counsel had "gone into our own pockets for private investigation in this case."

In Georgia, it has been held that " '[i]nstances of specific misconduct may not be used to impeach a witness' character or veracity unless the misconduct has resulted in the conviction of a crime involving moral turpitude, [cits.], and the proper method of proving such a conviction is by the introduction of a certified copy thereof. [Cit.]' [Cit.]"[5] As to an indigent criminal defendant's request for public funds to hire an investigator, "the general rule applies that the grant or denial of a motion for assistance of expert witnesses and other investigative services lies within the sound discretion of the trial court, and that some special need must be demonstrated to the trial court to grant funds to hire an investigator. [Cit.]"[6] *Brooks v. State*[7] held that "in making the requisite showing defendant could be placed in a position of revealing his theory of the case. He therefore has a legitimate interest in making that showing *ex parte*."[8] When appealing the denial of a motion for funds to hire an investigator, a criminal defendant must also show harm to obtain a reversal.[9]

Prior to trial, the defendants in this case were allowed to make an ex parte showing of their need for public funds to hire an investigator. At trial, counsel for Davis and Stephens expressed a need for additional funds to investigate or subpoena state's witnesses Powers and Wilson. They did not request another ex parte hearing. Therefore, there is no merit in their complaint that the trial court erred in refusing to hold one.

Powers appeared at trial and testified as a state's witness. Therefore, Davis and Stephens were not harmed by the trial court's denial of their request for funds to subpoena him. Certified copies of prior felony convictions against Wilson for two counts of entering an automobile and two counts of financial transaction card theft, entered in 1995 and obtained in the DeKalb Superior Court, were provided to the defense and entered into evidence. Consequently,

---

[5] *Jones v. State*, 226 Ga. App. 420, 422 (1) (487 SE2d 56) (1997).
[6] *Totten v. State,* 276 Ga. 199, 200 (2) (577 SE2d 272) (2003).
[7] 259 Ga. 562 (385 SE2d 81) (1989).
[8] Id. at 566 (2).
[9] See *Jones v. State*, 207 Ga. App. 46, 50 (4) (427 SE2d 40) (1993), and cit.

Davis and Stephens were not harmed by the court's denial of funds to obtain this impeaching evidence.

On direct examination, Powers admitted that at one time he had been a drug dealer and that criminal charges had been brought against him but were dismissed. On cross-examination, Powers additionally acknowledged that he had regularly sold cocaine for a period of time. During his cross-examination of Wilson, Davis's defense attorney asserted that Wilson had other, out-of-state criminal convictions, proof of which the defense had been unable to obtain. In response, the court permitted counsel to use information he had obtained in his own investigation to engage in extensive cross-examination of Wilson as to his criminal history, over objection by the prosecutor that no certified copies of criminal convictions were being introduced. Wilson proceeded to admit that the Atlanta Police Department had charged him with armed robbery in 1996, but he denied having been charged with carrying a concealed weapon or theft by taking. He admitted that he had been arrested in Illinois and charged with felony drug possession, but claimed that the case was dismissed. He denied having been charged with obstruction of an officer in the DeKalb Superior Court in 1995. He admitted, however, that he had been charged with probation violation and that, after he had gotten off probation, he had committed a burglary and armed robbery in 1999. He then denied having been charged with a theft by shoplifting in December 1996, as he was in jail at the time; but he admitted that in 1996 he had been charged with aggravated assault in connection with the armed robbery charge.

Thus, during the wide-ranging cross-examination permitted by the trial court, both Wilson and Powers made significant admissions as to their past criminal conduct. Moreover, the investigation which defense counsel undertook at their own expense failed to show that either witness had any undisclosed felony convictions that could have been used for impeachment purposes. Given these facts, and considering the function which these witnesses' testimony served in the context of the entirety of the state's case, we find it highly probable that any additional evidence of criminal convictions that might have been discovered through the use of state funds would not have affected the jury's verdict.[10] Therefore, denial of the defense motion was at most harmless error.[11]

4. Davis and Stephens contend that the trial court erred by allowing the state to introduce into evidence results of forensic chemical testing of the substance forming the basis of the cocaine posses-

---

[10] See *Peterson v. State*, 274 Ga. 165, 168 (2) (549 SE2d 387) (2001), and cits.; see also *State v. Dickerson*, 273 Ga. 408, 411-412 (2) (542 SE2d 487) (2001).

[11] *Peterson v. State*, supra.

sion charge, because there was a substantial break in the chain of custody.

> To show a chain of custody adequate to preserve the identity of fungible evidence, the State has the burden of proving with reasonable certainty that the evidence is the same as that seized and that there has been no tampering or substitution. The State need not foreclose every possibility of tampering, however, and need only show "reasonable assurance" of the identity of the evidence. [Cit.][12]

Investigating officers found a package containing a white powdery substance on the side of the roadway along with other items thrown from the getaway Jeep. State's evidence showed that from May 20, 1999, until October 21, 1999, the package was stored in a secure evidence locker at the Madison County Sheriff's Department; that on October 21, the package was sent by certified mail to the Georgia Bureau of Investigation crime lab; that the package was delivered to the crime lab on October 25; and that crime lab employees later tested the substance in the package and determined that it was cocaine or a cocaine mixture weighing 6.4 grams. United States Postal Service certified mail receipts were admitted showing the October 21 mailing date and the October 25 delivery date for the cocaine.

At trial, Davis and Stephens objected to admission in evidence of the cocaine because of an absence of evidence that it had been held in a secure location during the five-month period it was stored at the Madison County Sheriff's Department. The trial court did not err in overruling objections to admission of the evidence on this ground. On appeal, Davis and Stephens contend that the evidence should not have been admitted because a drug entry log from the state crime lab stated that the evidence was not received at the crime lab until January 4, 2000. Because Davis and Stephens did not object to admission of the cocaine on this ground at trial, we find that the question of whether the evidence should have been denied admission for this reason has not been preserved for appellate review. "In order to raise on appeal an impropriety regarding the admissibility of evidence, the specific ground of objection must be made at the time the evidence is offered, and the failure to do so amounts to a waiver of that specific ground. [Cit.]"[13]

5. Davis and Stephens charge the trial court with error in instructing the jurors that they would be authorized to consider

---

[12] *Winter v. State*, 252 Ga. App. 790, 791 (2) (557 SE2d 436) (2001).
[13] Id. at 791 (1).

lesser included offenses only if they found the defendants not guilty of the greater offenses of armed robbery and aggravated assault or determined that the evidence did not support a finding of guilt of the greater offenses beyond a reasonable doubt.

Relying on *Edge v. State*,[14] they argue that this was an improper sequential charge. This argument is without merit. The Court in *Edge* held that a charge requiring the jury to consider voluntary manslaughter only if it has considered and found the defendant not guilty of malice murder and felony murder is not appropriate where there is evidence that would authorize a charge on voluntary manslaughter.[15] The Court reasoned that such a "sequential" charge eliminates the jury's full consideration of voluntary manslaughter because, if it concludes a felony murder occurred, it would not then go on to consider evidence of provocation or passion which might authorize a verdict for voluntary manslaughter. In *Kirk v. State*,[16] however, we held that the sequential charge disapproved in *Edge* is specific to the context of felony murder and voluntary manslaughter and that the rationale for its disapproval does not apply where, as here, all elements of the lesser offense are contained in the greater offense.[17] In *Parks v. State*,[18] we approved a jury instruction substantially similar to the one given here.[19] *Parks* distinguished *Kunselman v. State*,[20] which disapproved a charge in effect requiring the jury to render a unanimous verdict of not guilty on the greater offense before considering the lesser included offense. In this case, as in *Kirk* and *Parks*, there was no error in the charge given.

6. Davis's and Stephens's appellate lawyers, who also served as their trial attorneys, claim that they themselves provided ineffective assistance at trial by failing to have voir dire of the petit jury venire recorded, thereby precluding any *Batson*[21] challenge; by failing to impeach Duncan with a prior inconsistent statement; by failing to object to inflammatory and unfairly prejudicial comments made by Duncan during cross-examination; and by failing to preserve a number of evidentiary objections for appeal.

"In order to establish ineffective assistance of counsel, [Davis and Stephens were] required to show that [their] trial [lawyers'] per-

---

[14] 261 Ga. 865 (414 SE2d 463) (1992).

[15] Id. at 867 (2).

[16] 210 Ga. App. 440 (436 SE2d 553) (1993).

[17] Id. at 444 (2).

[18] 241 Ga. App. 381 (526 SE2d 893) (1999).

[19] Id. at 383-384 (5).

[20] 232 Ga. App. 323, 324 (1) (501 SE2d 834) (1998).

[21] *Batson v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986) (holding that equal protection prohibits state from excluding members of defendant's race from jury venire on account of race).

formance was deficient and that such deficient performance so prejudiced [their] defense that a reasonable probability existed that the outcome of the trial would have been different in the absence thereof. [Cits.]"[22] "In order to find actual prejudice, a court must conclude that 'there is a reasonable probability (i.e., a probability sufficient to undermine confidence in the outcome) that, but for counsel's unprofessional errors, the result of the proceeding would have been different[.] (Cit.)' [Cit.]"[23] "Absent a showing of prejudice, no further inquiry need be made into counsel's alleged deficiency. [Cit.] 'A trial court's finding that a defendant has been afforded effective assistance of counsel must be upheld unless that finding is clearly erroneous.' [Cit.]"[24]

As to the claim that the defense lawyers were ineffective because they did not ask for recordation of voir dire for preservation of a possible *Batson* challenge, Davis and Stephens have failed to establish either that a *Batson* violation occurred, or that, but for the failure of counsel to request recordation of voir dire, a new trial would be required on this ground.[25] The references to the transcript provided by Davis and Stephens in support of their other claims fail to show that Duncan made any prior inconsistent statement, that she gave testimony demanding any objection not made, or that counsel failed to preserve any meritorious evidentiary objections for appellate review. Although Davis's and Stephens's lawyers now apparently have second thoughts about their method of cross-examining various state's witnesses, it did not fall outside the broad range of reasonable professional conduct.[26]

7. Finally, Stephens challenges the admission in evidence of a post-arrest, pretrial statement he gave to police. He characterizes the statement as a confession and contends that the court erred in admitting it without finding with the requisite specificity that it was knowing and voluntary. Stephens also claims that the confession should not have been admitted because it was involuntary.

These contentions have no merit. The record shows that the court held a *Jackson v. Denno* hearing and ruled at the conclusion of the hearing that "the statement will be allowed."

Even if [Stephens] is deemed not to have waived any objections as to the specificity of the ruling by [his] failure to object thereto at the time of trial, we hold that the conclu-

---

[22] *Chancey v. State*, 258 Ga. App. 319, 321 (4) (574 SE2d 383) (2002).

[23] *Head v. Ferrell*, 274 Ga. 399, 404 (V) (554 SE2d 155) (2001).

[24] *Chancey v. State*, supra.

[25] *Polk v. State*, 225 Ga. App. 257, 259 (1) (d) (483 SE2d 687) (1997).

[26] *Penaranda v. State*, 203 Ga. App. 740, 743 (4) (b) (417 SE2d 683) (1992).

sion of voluntariness appears from the record with unmistakable clarity, especially considering that the whole tenor of the hearing had been toward the issue of voluntariness.[27]

The record supports the trial court's determination that Stephens's statement to police was voluntarily made.[28]

*Judgments affirmed. Blackburn, P. J., and Ellington, J., concur.*

DECIDED NOVEMBER 18, 2003.

*R. Edward Furr, Jr., Penny D. Furr,* for appellant (case no. A03A2150).

*Joseph E. Williams,* for appellant (case no. A03A2151).

*Robert W. Lavender, District Attorney, Marsha D. Cole, Assistant District Attorney,* for appellee.

---

[27] *Sanders v. State,* 257 Ga. 239, 240 (1) (a) (357 SE2d 66) (1987); see *Wheeler v. State,* 213 Ga. App. 52 (443 SE2d 691) (1994).

[28] See generally *Grier v. State,* 273 Ga. 363, 365 (2) (541 SE2d 369) (2001).