## A04A0619. JEFFERIES v. THE STATE.

(600 SE2d 753)

MIKELL, Judge.

Danny Edward Jefferies was convicted of two counts of aggravated battery, five counts of aggravated assault, two counts of possession of a firearm during commission of certain crimes, and one count of possession of a firearm by a convicted felon. The trial court sentenced him to 40 years, with 30 to be served in confinement. Jefferies appeals, arguing that he was denied the effective assistance of counsel, that the trial court erred in admitting evidence of his possession of a gun at the time of his arrest, and that the evidence was insufficient to support his conviction of aggravated assault against one of the victims. We affirm.

On appeal from a criminal conviction, the evidence is viewed in the light most favorable to the verdict. *Paul v. State*, 231 Ga. App. 528 (499 SE2d 914) (1998). We do not weigh the evidence or determine witness credibility but only determine whether the evidence is sufficient under *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). The verdict must be upheld if any rational trier of fact

---

[9] *Sewell Sales*, supra at 534 (2).

[10] OCGA § 9-3-31.

could have found the essential elements of the crime beyond a reasonable doubt. *Green v. State*, 249 Ga. App. 546, 548-549 (1) (547 SE2d 569) (2001).

So viewed, the evidence shows that on February 14, 2002, at approximately 1:00 a.m., a fight broke out between Jefferies and Gary Lumpkin in the Rocksprings area of Athens. According to Lumpkin, he was selling cocaine to a customer when Jefferies approached and tried to "bust [his] hustle," which Lumpkin explained meant trying to take his customer. Jefferies and Lumpkin argued and then began fighting. Initially, they used their fists, but there is evidence that one picked up a bottle and the other a brick as the fight escalated. Several other men were present during the fight, including Nikema Stovall, Alfred King, Jerry Wade, and Anthony "Moosehead" Johnson. Some of the men attempted to break up the fight, which ended with the parties going their separate ways after Lumpkin refused to shake Jefferies's hand.

Johnson testified that Jefferies returned to the Rocksprings area approximately two hours after the fight ended. According to Johnson, Jefferies asked where Lumpkin was, and Johnson replied that he did not know. Next, Jefferies asked about King, and Johnson took him to where King was standing. Johnson testified that Jefferies told King that he would not be breaking up any more fights. According to King, Jefferies produced a pistol from inside his coat and shot King in the back and neck.

The evidence shows that Lumpkin went with Stovall, Pauline Hill, and Demetrius Sims to a Kroger grocery store after the fight. According to Lumpkin, when they returned to Rocksprings, they encountered Jefferies while unloading the groceries. Lumpkin testified that Jefferies had a pistol which he attempted to fire, but the gun initially jammed. Then, from a distance of approximately two feet, Jefferies successfully fired the gun, striking Lumpkin in the stomach. Next, Jefferies aimed the gun at Lumpkin's head and attempted to fire, but the weapon jammed again. When Jefferies next succeeded in discharging the gun, the bullet struck Lumpkin in the arm. Lumpkin began begging for his life and throwing money at Jefferies. He attempted to run away but was shot once more in the finger. Finally, Lumpkin reached a nearby porch where he lost consciousness.

The record shows that Jefferies proceeded to the home of his cousin, Peggy Sims, where he told her that "he had been cut by Gary Lumpkin." According to Sims, Jefferies told her that Stovall and King had helped Lumpkin cut him. An audiotape of a police interview with Sims was played for the jury, in which she told a detective that Jefferies told her that after he got away from Lumpkin and the other men, someone gave him a gun, and "that's when [he] shot him."

Kerry Smith, the manager of a local Hardee's restaurant, testified that he encountered a man later identified as Jefferies on the night of February 14, 2002. According to Smith, after closing the restaurant, he was headed to Kinko's to copy some paperwork when Jefferies approached his car and asked for a ride. As they pulled away, Jefferies asked Smith to stop at a Kangaroo convenience store to get change for a $50 bill. When Smith replied that it was unlikely that the store would have that much change late at night, Jefferies asked Smith if he had change. When Smith replied that he did not, Jefferies told Smith to take him to the "damn Kangaroo." At that point, Jefferies reached near his waist and pulled out what Smith believed was a gun. He heard a click and a sliding sound. Certain that Jefferies had a gun, Smith opened the door and bailed out of the moving car. As he fell, he heard what sounded like a gunshot.

Johnson and King identified Jefferies at trial as the person who shot King. He was also identified by Lumpkin and Smith as each man's respective attacker.

1. First, Jefferies contends that he received ineffective assistance of counsel because his trial attorney failed to subpoena two potential alibi witnesses, Carey and Mekose Sims. Jefferies argues that the two witnesses would have corroborated his testimony that he went to Peggy Sims's home immediately after the fight, where he stayed until he went to the home of his sister, Kristie Jefferies, and spent the night.

The proper standard to be employed in determining enumerations concerning ineffective assistance of counsel . . . is the two-pronged test announced in *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). First, appellant must show that counsel's performance was deficient; second, he is required to show that he was prejudiced by counsel's deficient performance. There is a strong presumption that trial counsel's performance falls within the wide range of reasonable professional assistance, and that any challenged action by trial counsel might be considered sound trial strategy. As to the second prong, the question is whether there exists a reasonable probability that, but for his counsel's errors, the jury would have had a reasonable doubt regarding appellant's guilt, that is, but for counsel's unprofessional errors, the result of the proceeding would have been different. . . . Further, a trial court's finding that a defendant has been afforded effective assistance of counsel must be upheld unless that finding is clearly erroneous.

(Citation omitted.) *Hall v. State*, 243 Ga. App. 804, 805 (534 SE2d 196) (2000). Bearing these principles in mind, we cannot conclude that the trial court's judgment was clearly erroneous.

As a preliminary matter, we acknowledge that counsel's failure to subpoena the two individuals does not appear to have been a matter of trial strategy, as defense counsel testified at the hearing on the motion for a new trial that he did not call Mekose Sims because he lacked contact information for him and that he did not recall Jefferies even suggesting that Carey Sims be contacted as a potential witness. However, regardless of the cause, the fact that counsel did not subpoena the two suggested witnesses does not require a finding of ineffective assistance. Even assuming, arguendo, that counsel's failure to interview Carey and Mekose Sims amounted to deficient performance, Jefferies has failed to demonstrate prejudice, because the testimony of the two men would have been cumulative of that of other witnesses. See *Gibson v. State*, 277 Ga. 486, 488 (2) (591 SE2d 800) (2004); *Ponder v. State*, 201 Ga. App. 388, 389-390 (1) (411 SE2d 119) (1991).

At the hearing on the motion for new trial, Mekose Sims testified that Jefferies arrived at his aunt Peggy Sims's home sometime between 12:00 and 1:30 on the morning of February 14, 2002; that Jefferies had cuts on his neck and arm; that Jefferies said that he had been in a fight; and that he dropped Jefferies off at the home of Jefferies's sister and then drove off. Carey Sims provided very similar testimony at the hearing. At trial, the defense called witnesses Lamar Marshall and Kristie Jefferies to corroborate Jefferies's account of his whereabouts after the fight with Lumpkin. Further, Peggy Sims testified that her son Carey Sims was residing with her on the night that Jefferies arrived at their home. Based on the foregoing, we cannot conclude that had counsel called Carey and Mekose Sims as witnesses, the trial would have had a different outcome, particularly in light of the fact that their testimony would have been cumulative of other evidence presented. See *Gibson*, supra; *Ramey v. State*, 239 Ga. App. 620, 623 (2) (521 SE2d 663) (1999). The trial judge had the opportunity to hear all of the testimony presented at trial and at the motion hearing, and we do not find that his judgment in denying the motion for a new trial was clearly erroneous.

2. Next, Jefferies contends that the trial court abused its discretion by admitting evidence that he was in possession of a firearm at the time of his arrest. Jefferies argues that because the state acknowledged that the gun was not the weapon used in the shootings of King and Lumpkin, the evidence of his possession of that weapon was irrelevant and improperly placed his character in issue. We disagree.

In *Blaylock v. State*, 242 Ga. App. 195 (529 SE2d 203) (2000), we rejected a similar argument and recognized the general rule that "all

the circumstances connected with a defendant's arrest are considered proper evidence to be submitted to the jury to be weighed by it for what they are worth." (Punctuation and footnote omitted.) Id. at 196, citing *State v. Luke*, 232 Ga. 815, 816 (209 SE2d 165) (1974). There, we held that evidence of a crack pipe found on the defendant at the time of his arrest was admissible even though he was charged with selling cocaine and not with possession of a crack pipe. *Blaylock*, supra. See also *Miller v. State*, 270 Ga. 741, 743-744 (3) (512 SE2d 272) (1999); *Moore v. State*, 265 Ga. App. 511, 513 (3) (594 SE2d 734) (2004). Similarly, in *Kirk v. State*, 210 Ga. App. 440 (436 SE2d 553) (1993), we held that "articles found in the control of the defendant at the time or near the time of [the] arrest are admissible as circumstances connected with the arrest of the defendant." (Citation and punctuation omitted.) Id. at 443 (1). Accordingly, the trial court did not abuse its discretion in admitting evidence of the gun in Jefferies's possession at the time of his arrest.

3. Finally, Jefferies contends that the evidence was insufficient to support his conviction for aggravated assault on Smith. We disagree.

Under OCGA § 16-5-20 (a) (2), a person commits simple assault when he "[c]ommits an act which places another in reasonable apprehension of immediately receiving a violent injury." A simple assault will be considered aggravated when it is committed with a deadly weapon. OCGA § 16-5-21 (a) (2). The evidence summarized above demonstrates that Smith observed Jefferies remove what Smith believed was a gun from his waistband; that Smith heard a clicking noise; and that he was so afraid of being shot that he jumped from a moving car. Additionally, Smith testified that he heard what sounded like a shot being fired as he jumped. Based on this evidence, a rational trier of fact could have found the essential elements of aggravated assault beyond a reasonable doubt. See *Jackson v. Virginia*, supra.

*Judgment affirmed. Blackburn, P. J., and Barnes, J., concur.*

DECIDED JUNE 4, 2004.

*Christopher L. Casey*, for appellant.
*Kenneth W. Mauldin, District Attorney, Edward H. Brumby, Jr., Assistant District Attorney*, for appellee.