A07A1952. KING v. THE STATE.
(658 SE2d 883)

PHIPPS, Judge.

James T. King was charged with second degree arson and making terroristic threats. After a jury trial, he was convicted of second degree criminal damage to property and making terroristic threats. On appeal, he claims that the evidence was insufficient to support his conviction for criminal damage to property and that the trial court erred in its jury charge on prior difficulties and by sentencing him as a recidivist. He also claims that his trial counsel was ineffective. Finding no reversible error, we affirm.

Viewed in the light most favorable to the verdict, the evidence showed that on June 1, 2005, at approximately 9:30 p.m., a fire destroyed a building owned by Albertha Butler. The building was very old, made of wood, and was being used to store furniture and other household items. Butler kept the building locked. The building had no electricity or gas connected to it and it was not used to store chemicals. Butler had no insurance on the building.

Before the fire, Lizzie Cutter, who lived near the building and had known King his entire life, testified that she saw King walk past the building and then turn around and walk by it again. Immediately thereafter, Cutter saw fire and called 911. Cutter did not see anyone else walking in the area before the fire. When the police arrived, Cutter told an officer that she had seen King walking by the building

before the fire. After he was arrested, Cutter heard King threatening Albertha Butler and her daughter, Joyce, who was King's former girlfriend.

Cutter's daughter testified that, as she was coming home from work, she saw King by the railroad tracks, which are not far from their house, and that he was walking "kind of fast." When she got home, the building was on fire. She informed a police officer where she had seen King.

William Aldridge with the Savannah-Chatham Metropolitan Police Department responded to the fire. He testified that Lizzie Cutter and her daughter told him that they had seen King running away from the burning building. Aldridge located King approximately a quarter mile from the fire and arrested him. After he arrested King, Aldridge heard him threaten to kill Albertha and Joyce Butler.

The state presented evidence of prior difficulties between the parties through Joyce Butler. She testified that she had dated King "off and on" for about twenty-three years, and that they had four children together. In December 2004, their relationship ended badly because King expressed a belief that she was trying to keep their youngest child away from him. She testified that King had come to her place of employment and demanded that she leave work to get their son for him. When she refused, he threatened to hit her on the head with a wine bottle. Another time, King made a gesture that she interpreted as a threat that he was going to kill her. And one night, she saw him sleeping on the roadside in front of her property. After these events, she obtained a restraining order against King.

At the time of the fire, Joyce Butler and King were still on bad terms. After he was arrested at the fire scene, King told her that he would kill her and her mother when he got out of jail. Albertha Butler arrived at the fire scene while the firemen were extinguishing the flames. She was also present when King was arrested and heard him say that he was going to kill her and her daughter when he got out of jail.

Edward Rybeck, a certified arson investigator with the Savannah-Chatham Metropolitan Police Department, began investigating the fire scene the next morning and testified at trial as the state's arson investigation expert. The building, which had "been consumed probably eighty percent," was located in a clean-kept grassy field with another house approximately 30 to 40 feet away. Rybeck took several photographs of the scene, one of which depicted a "hot spot," or an area of deep charring, on the interior floor of the building that he considered to be the fire's point of origin. This "hot spot" was located three to four feet from the outside wall on the back side of the building, near a window and a door. Rybeck testified that "[p]erhaps

some type of an accelerant was thrown or poured there." He noted that there was no electrical service or gas connection to the building and found no chemicals that could have spontaneously combusted to start the fire. He opined that someone set the fire by placing or throwing some type of ignitable liquid on the floor, causing the old building to burn very rapidly. But when he took samples of the floor, he did not find any flammable liquid, leading him to believe it had cleanly burned away. He testified that this often happens when using a flammable liquid because it burns first.

1. King claims that the evidence was insufficient to support his conviction for criminal damage to property.

> On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, and the defendant no longer enjoys the presumption of innocence. We do not weigh the evidence or determine witness credibility, but only determine if the evidence was sufficient for a rational trier of fact to find the defendant guilty of the charged offense beyond a reasonable doubt.[1]

A person commits the offense of second degree criminal damage to property when he "[r]ecklessly or intentionally, by means of fire or explosive, damages property of another person . . . or [w]ith intent to damage, starts a fire on the land of another without his consent."[2]

Initially, King asserts that Rybeck's opinion should be discounted because it arguably conflicts with a manual published by the National Fire Protection Association. The manual, however, was not submitted in evidence and Rybeck did not testify that it was part of his training or that he relied on it in forming his opinion.

King also argues that the circumstantial evidence presented at trial did not authorize his conviction. To warrant a conviction on circumstantial evidence, the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis except the defendant's guilt.[3] The circumstantial evidence must exclude only reasonable hypotheses, not every inference or hypothesis except the defendant's guilt.[4] And

> [w]hether circumstances were sufficient in this case to exclude every reasonable hypothesis except that of defendant's guilt was a question for the jury. It is only when the evidence

---

[1] *Martinez v. State*, 278 Ga. App. 500 (629 SE2d 485) (2006) (citations omitted).
[2] OCGA § 16-7-23 (a) (2), (3).
[3] OCGA § 24-4-6.
[4] *Jordan v. State*, 281 Ga. App. 419, 423 (1) (636 SE2d 151) (2006).

is insupportable as a matter of law that the jury's verdict may be disturbed, even where the evidence is entirely circumstantial.[5]

Here, the jury's verdict is not insupportable as a matter of law or outside the proven facts. Thus, we will not disturb it.[6] Even though there was no direct evidence that King committed the crime, we conclude that the circumstantial evidence was sufficient for a rational trier of fact to find King guilty of second degree criminal damage to property.[7]

2. King claims that the trial court erred when instructing the jury on prior difficulties between parties by using the pattern instruction, which pertinently provides, "Evidence of prior difficulties between the defendant and the alleged victim has been admitted for the sole purpose of illustrating, if it does so illustrate, the state of feeling between the defendant and the alleged victim and the bent of mind and course of conduct on the part of the defendant."[8] He argues that the language "and the bent of mind and course of conduct on the part of the defendant" should be eliminated for various reasons. This court has recently considered and rejected this exact claim.[9]

3. King claims that the trial court erred by sentencing him to serve his sentence without parole pursuant to OCGA § 17-10-7 (c).

> [A]ny person who, after having been convicted under the laws of this state for three felonies . . . , commits a felony within this state other than a capital felony must, upon conviction for such fourth offense or for subsequent offenses, serve the maximum time provided in the sentence of the judge based upon such conviction and shall not be eligible for parole until the maximum sentence has been served.[10]

The state notified King in the indictment and a separate notice that it intended to seek recidivist punishment. The state also produced copies of three prior felony convictions, which were used to sentence King in this case. Thus, the trial court did not err by sentencing King under OCGA § 17-10-7 (c).

---

[5] Id. (citation and punctuation omitted).

[6] See *Giles v. State*, 211 Ga. App. 594, 595 (1) (440 SE2d 48) (1993).

[7] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); see also *Giles*, supra; *Collins v. State*, 201 Ga. App. 433, 434 (1) (411 SE2d 341) (1991).

[8] Suggested Pattern Jury Instructions, Vol. II: Criminal Cases (4th ed.), § 1.34.20.

[9] *Newsome v. State*, 289 Ga. App. 590, 595 (4) (657 SE2d 540) (2008); see also *Kettman v. State*, 257 Ga. 603, 605 (7) (362 SE2d 342) (1987); *Thompson v. State*, 257 Ga. 481, 482 (5) (361 SE2d 154) (1987).

[10] OCGA § 17-10-7 (c).

King disputes that one of his prior convictions was a valid felony conviction. In 1990, King was indicted for robbery. He pled guilty in 1991 to theft by taking and was given a felony sentence. King now claims that the 1991 sentence was illegal because the factual basis for the plea did not state the value of the property taken, which was needed to support a felony sentence. King argues that the remedy in this situation is remand to the trial court for resentencing, not withdrawal of the guilty plea.

A trial court's authority to vacate or modify a sentence ends when the term of court in which the judgment was entered expires.[11] An exception exists when the sentence is void, or one that the law does not allow.[12] King pled guilty to theft by taking, with the understanding that his sentence could range from one to ten years. His four-year sentence was not outside the maximum allowed.[13]

After a trial court's authority to vacate or modify a sentence ends, the proper method for challenging the validity of a guilty plea and resulting sentence is through a habeas corpus petition filed in the superior court of the county where a prisoner is detained.[14] Because King is incarcerated in a different county from that in which he was tried, his motion for new trial cannot be considered such a petition.[15]

4. King claims that his trial counsel was ineffective by failing to object to evidence he asserts was inadmissible, failing to object to a jury charge, failing to object to the trial court sentencing him as a recidivist, and failing to prepare properly for Rybeck's cross-examination.

To establish trial counsel's ineffectiveness, King must show that his counsel's performance was deficient and that the deficient performance prejudiced his defense.[16] The standard for attorney performance is reasonably effective assistance considering all the circumstances, with a strong presumption that, under the circumstances, the challenged action might be considered sound trial strategy.[17] The test for reasonable attorney performance is "whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial."[18]

---

[11] *Goodrum v. State*, 259 Ga. App. 704 (578 SE2d 484) (2003).

[12] Id.; *Jones v. State*, 278 Ga. 669, 670 (604 SE2d 483) (2004).

[13] OCGA § 16-8-12 (a) (1).

[14] *Goodrum*, supra at 704-705.

[15] See id. at 705.

[16] *Strickland v. Washington*, 466 U. S. 668, 687 (104 SC 2052, 80 LE2d 674) (1984).

[17] Id. at 687-689.

[18] *Stansell v. State*, 270 Ga. 147, 150 (2) (510 SE2d 292) (1998) (citations and punctuation omitted).

When reviewing a trial court's ruling on trial counsel's effectiveness, "we accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts."[19]

(a) King claims that his trial counsel should have objected to the state's questioning of Cutter because it called for inadmissible speculation. Specifically, Cutter was asked:

> STATE: Did you tell the police officer that [King] had started the fire?
> CUTTER: No, I didn't.
> STATE: What did you tell the police officer?
> CUTTER: I tell him I thought he did.
> STATE: Why did you think that he did, relative to what you saw that night?
> CUTTER: Because there was no one there, and it did not start[ ] until he went down and went back. And when he went back, by the time he could walk by and did whatever he had to do, it was on fire. And there was no one else there because I — I be waiting on my daughter and I be looking. There was no one else walking, unless it had to been invisible.

At the motion for new trial hearing, King's trial counsel testified that he did not object to this testimony because he "wanted to see where it was going." He viewed Cutter's overall testimony to be consistent with the defense theory that King was only seen in the area; he was not seen close enough to the building to have started the fire. While cross-examining Cutter, King's trial counsel brought out that she did not see King go up to the building and that she did not see anything in his hands that could have been used to start the fire.

King has not shown that his trial counsel's failure to object to the state's questioning was deficient. "We will not find deficient performance if counsel's trial strategy and tactics were reasonable, and [King] must establish that trial counsel's action fell outside the wide range of reasonable professional assistance."[20] "Not objecting to testimony but instead subjecting it to cross-examination may be part of a reasonable trial strategy."[21] And here, King's trial counsel used

---

[19] *Suggs v. State*, 272 Ga. 85, 88 (4) (526 SE2d 347) (2000) (citation omitted).

[20] *Al-Attawy v. State*, 289 Ga. App. 570, 573 (1) (657 SE2d 552) (2008) (citations omitted).

[21] Id. (citations omitted); see also *Hargrove v. State*, 289 Ga. App. 363, 367-368 (4) (a) (657 SE2d 282) (2008) (trial counsel not required to object to improper questioning; that decision is matter of trial strategy and tactics).

Cutter's cross-examination to support his defense theory. King has not shown that this strategy was unreasonable.[22]

(b) King claims that his trial counsel should have objected to the jury charge on prior difficulties because it included the language "and the bent of mind and course of conduct on the part of the defendant" from the pattern instruction. Because the trial court did not err in giving this instruction,[23] King's trial counsel did not err in failing to object to it.[24]

(c) King claims that his trial counsel should have objected to the state's questioning of Aldridge. During direct examination, the prosecutor asked Aldridge why he decided to charge King with terroristic threats. Aldridge responded, "Due to the fact that he made the — the comments in my presence towards those two people, and it was — with all the situation going on it was appropriate to charge him." King claims that this was inadmissible opinion testimony on the ultimate issue.

We disagree because Aldridge was not asked his opinion on the ultimate issue of whether King was guilty of making terroristic threats, but instead why he decided to charge King with that crime.[25] Trial counsel's failure to object to the state's question did not amount to constitutionally deficient performance.[26]

(d) King claims that his trial counsel should have objected to the trial court sentencing him as a recidivist under OCGA § 17-10-7 (c) because his theft by taking conviction was not a valid felony conviction.

The complained of conviction, resulting from a guilty plea, was designated a felony conviction. King does not complain that the plea was involuntary, that he was not represented by counsel, or that he did not understand the potential punishment associated with the plea. Under these circumstances, King has not shown that his trial counsel was unreasonable in failing to go behind a facially valid conviction that he has not shown could have been successfully challenged in the trial court.[27]

(e) King claims that his trial counsel should have objected to Aldridge's testimony that the Cutters told him at the scene that King had run from the area of the fire because it constituted admission of prior inconsistent statements without a proper foundation. When

---

[22] See *Al-Attawy*, supra.

[23] See Division 2, supra.

[24] See *McGuire v. State*, 266 Ga. App. 673, 678 (4) (a) (598 SE2d 55) (2004) (trial counsel's failure to pursue a futile objection does not constitute ineffective assistance).

[25] See *Nolton v. State*, 196 Ga. App. 690, 692 (2) (396 SE2d 605) (1990).

[26] See *McGuire*, supra.

[27] See *Gore v. State*, 277 Ga. App. 635, 637-638 (2) (627 SE2d 198) (2006); Division 3, supra.

asked why he did not object, King's trial counsel responded that he thought the jury would recognize that the officer was merely repeating what someone had told him and that the actual witnesses had testified differently.

Pretermitting whether trial counsel's failure to object to this testimony constituted deficient performance, King has failed to show that he was prejudiced by trial counsel's decision not to object.[28] Lizzie Cutter testified that she saw King walk past the building shortly before and after the fire started and her daughter testified that she saw King walking "kind of fast" not far from the fire scene. King has failed to show that there is a reasonable probability (i.e., a probability sufficient to undermine confidence in the outcome) that the result of the proceeding would have been different, but for counsel's alleged errors.[29]

(f) King claims that his trial counsel was not adequately prepared for Rybeck's cross-examination because he failed to consult arson treatises, specifically a manual published by the National Fire Protection Association that included a guide for fire and explosive investigations. According to King, significant portions of Rybeck's investigation were contradicted by this guide.

Pretermitting whether trial counsel's failure to consult and cross-examine Rybeck with a fire investigation manual or treatise constituted deficient performance, King cannot show prejudice.[30] Even without Rybeck's testimony, the jury heard that the building was very old, had no electricity or gas connected to it, and was not used to store chemicals; that King was the only person in the vicinity when Cutter noticed the building was burning; and that he had prior difficulties with the owner's daughter.

Rybeck testified that a liquid accelerant may have started the fire. King challenged this theory at the motion for new trial hearing. At that hearing, Rybeck admitted that it is possible that a sample of the burnt building could have been analyzed to determine if a liquid accelerant was present and that he had not done so. But he also stated that such analysis might not have been possible, depending on the "extent of the burn." Rybeck's trial testimony was that "[p]erhaps some type of accelerant was thrown or poured" on the building floor, but he admitted on cross-examination that he did not know specifically what caused the fire. King has failed to show that there is a reasonable probability that the result of the proceeding would have

---

[28] See *Fortson v. State*, 280 Ga. 435, 436 (2) (a) (629 SE2d 798) (2006) (when ruling on ineffective assistance claim, we need not analyze the deficient performance prong if we determine the prejudice prong has not been satisfied).

[29] See *Davis v. State*, 264 Ga. App. 221, 228 (6) (590 SE2d 192) (2003).

[30] See *Fortson*, supra.

been different, but for counsel's failure to establish these points in cross-examining Rybeck.[31]

Assuming that trial counsel's failure to object to Aldridge's testimony regarding statements by the Cutters and failure to consult and cross-examine Rybeck with a fire investigation manual or treatise constituted deficient performance, we conclude that King has failed to show prejudice sufficient to sustain his ineffective assistance of counsel claim.[32]

*Judgment affirmed. Johnson, P. J., and Mikell, J., concur.*

DECIDED MARCH 7, 2008.

*Steven L. Sparger*, for appellant.

*Spencer Lawton, Jr., District Attorney, Jonathan V. Dunn, Assistant District Attorney*, for appellee.

---

[31] See *Davis*, supra.
[32] See *Schofield v. Holsey*, 281 Ga. 809, 816 (II) (642 SE2d 56) (2007).